[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14947

_____

D. C. Docket No. 99-03458-CV-JAL

MAZEN AL NAJJAR,

Petitioner-Appellee,
Cross-Appellant,

versus

JOHN ASHCROFT, Attorney General,
United States Department of Justice,
DORIS MEISNER, Commissioner,
Immigration and Naturalization Service,
et al.,

Respondents -Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(November 28, 2001)**

Before HULL, MARCUS and FARRIS*, Circuit Judges.

PER CURIAM:

_____

*Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Respondents-Appellants John Ashcroft, et al. ("the Attorney General") appeal a decision of the district court granting Petitioner-Appellee Mazen Al Najjar's request for habeas corpus relief in connection with his bond redetermination proceedings. In an order dated May 31, 2000, the district court ruled that the government could not detain Al Najjar pending judicial review of the BIA's order of deportation on the basis of undisclosed, classified information linking him to the Palestinian Islamic Jihad ("PIJ"), a terrorist organization. See Al Najjar v. Reno, 97 F. Supp. 2d 1329 (S.D. Fla. 2000). Just recently, however, on November 13, 2001, a mandate issued from a panel of this Court in a related case denying Al Najjar's petition for judicial review and affirming the BIA's deportation order on grounds completely unconnected to the terrorist allegations. See Case No. 99-14807 (underlying panel decision at Al Najjar v. Ashcroft, 257 F.3d 1262 (11th Cir. 2001)). Because the issuance of the November 13th mandate constitutes a final order of deportation, the Attorney General now possesses the unquestioned authority to detain Al Najjar without bond as he executes that order without regard to any classified information portraying Al Najjar as a national security threat. The government's appeal of his separate bond case is therefore moot, depriving this Court of jurisdiction. Accordingly, the appeal must be

dismissed and the district court's order, as well as the bond granted on remand, vacated.

## I.

Understanding the circumstances of this case requires a discussion of two separate, yet largely concurrent, legal actions involving Al Najjar. The first action is the government's effort to remove Al Najjar from the United States due to the expiration of his status as a legal alien. The second action, which is the subject of this appeal, is Al Najjar's bid to be released from detention on bond during the pendency of his deportation proceedings. In the end, it is the recent and final completion of the first action that renders the instant case unambiguously moot.

Al Najjar was born in Gaza in 1957 and moved with his family to Saudi Arabia one year later. After thirteen years there, he moved to Egypt, where he completed high school and eventually received a bachelor's degree in 1979. From 1979 to 1981, he worked in the United Arab Emirates ("UAE") on a temporary work visa. In 1981, Al Najjar first entered the United States on a Palestinian refugee travel document issued by the Egyptian government. Aside from a brief trip abroad in 1984, Al Najjar has remained in this country since that time. After obtaining authorization from the Immigration and Naturalization Service ("INS") to stay in the United States for the duration of his nonimmigrant student status, Al

Najjar pursued graduate degrees in engineering in North Carolina and at the University of South Florida ("USF") in Tampa, earning a doctorate in 1994. In addition to his engineering work, Al Najjar helped to found at USF the World and Islam Studies Enterprise ("WISE"), described by this Court in the related case as "a think-tank ostensibly committed to educating the public about Islamic issues through research, publishing, and seminars." 257 F.3d at 1272.

The first legal action against Al Najjar (the government's effort to deport him) commenced on April 19, 1985, when the INS issued an order to show cause under 8 U.S.C. § 1251(a)(9) (1984), alleging that Al Najjar had failed to maintain the conditions of his nonimmigrant status by providing untruthful information to the INS. The basis of the allegation was a claim by Al Najjar's first wife that she had participated in a sham marriage to allow him to obtain a green card. The INS later supplemented the order to show cause by charging that Al Najjar had not maintained the conditions of his nonimmigrant status under the Immigration and Nationality Act ("INA"). On June 4, 1986, the case against Al Najjar was closed when he failed to appear at an administrative hearing. Al Najjar asked the INS to re-open the hearing once he received notice of it a few weeks later, but he received no response.

4

After a decade had passed, the INS rescheduled Al Najjar's case for a deportation hearing on February 8, 1996. Those proceedings were consolidated with deportation proceedings for his wife, Fedaa. At the hearing, Al Najjar conceded his deportability on the ground that he had overstayed his nonimmigrant student visa status, but he asked for relief from deportation, including asylum, withholding of removal, and suspension. In an effort to show that Al Najjar should not be given discretionary relief, the INS produced at the administrative hearing evidence purportedly linking Al Najjar and WISE to the PIJ, a known terrorist group, and various individuals who have supported and engaged in terrorism in the Middle East. On May 13, 1997, an immigration judge ("IJ") found Al Najjar deportable and denied his application for relief. The IJ designated the UAE as his country of deportation, and Al Najjar appealed to the Board of Immigration Appeals ("BIA").

Six days after the IJ's ruling, federal agents arrested Al Najjar on the basis of classified information that he was connected to Middle Eastern terrorist organizations and detained him without bond on the ground that he posed a threat to national security. The second relevant legal action then commenced when, pursuant to 8 C.F.R. § 242.2(d) (1995), Al Najjar requested a redetermination of his custody status. The IJ conducted a two-part hearing. The first part of the

5

hearing was public and the second consisted of an ex parte review of classified information. The IJ then re-opened the public hearing to allow Al Najjar to rebut an unclassified summary of the confidential material. The summary stated that "[t]his Court was provided with information as to the association of [Al Najjar] with the Palestinian Islamic Jihad." Al Najjar's attorneys then called witnesses to rebut the allegation in this summary. On June 23, 1997, the IJ held that Al Najjar should remain detained without bond because he "is associated with a terrorist organization known as the Palestinian Islamic Jihad." Al Najjar appealed the bond decision to the BIA, arguing that the consideration of classified evidence in ex parte proceedings violated various statutory and constitutional rights. On September 15, 1997, the BIA affirmed the IJ's bond decision.

Two years later, on October 26, 1999, a different BIA panel affirmed the May 1997 IJ decision in the first action, ordering the deportation of Al Najjar and his wife. The Al Najjars then petitioned this Court for judicial review of their orders of deportation issued by the BIA. At the beginning of that judicial review, on December 16, 1999, a panel of this Court granted the Al Najjars' unopposed motions to stay deportation pending completion of their appeals to this Court.

After his deportation order was stayed and while his petition for judicial review of his deportation order was pending, Al Najjar filed on December 22, 1999

6

a petition for a writ of habeas corpus in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 2241, seeking his immediate release from custody pending the conclusion of the deportation proceedings. Like the appeal to the BIA, the habeas petition alleged that the consideration of classified material was barred by both the INA and the due process clause of the Fifth Amendment of the United States Constitution. The petition also claimed that Al Najjar was being punished on the basis of his political associations in violation of the First and Fifth Amendments.

On May 31, 2000, with the direct appeal of the merits of his deportation order still pending, the district court granted in part Al Najjar's petition for habeas relief. In its opinion, the district court framed the question in the case as "whether Petitioner has been denied the right to a fundamentally fair bond redetermination hearing pending the final determination of his deportation proceedings." 97 F. Supp. 2d at 1342. Despite finding that the consideration of classified material was permitted under INA § 242(a), 8 U.S.C. § 1252(a) (1995), the court determined, notably without examining the evidence, that the ex parte, in camera proceedings violated Al Najjar's due process rights. This decision was based in large part on the district court's determination that Al Najjar retained certain due process rights because he was not yet subject to a final order of deportation: "[A]s a 'deportable'

7

alien at the time of the bond redetermination hearing, Petitioner enjoys greater protections of due process than those afforded to [aliens] . . . subject to final orders of deportation from the United States." Id. at 1353. The district court also explained that Al Najjar's "mere association" with known terrorists was not alone a basis for detention. Id. at 1361.

As a remedy, the district court remanded the matter back to the IJ to make an initial determination of Al Najjar's entitlement to bond based solely on the public record. If the public evidence did not support detention, the government would be allowed to introduce the classified evidence in a way that afforded Al Najjar "access to the decisive evidence to the fullest extent possible, without jeopardizing legitimately raised national security interests." Id. at 1358 (quotations omitted). The government appealed to this Court and Al Najjar filed a cross-appeal, primarily challenging the district court's conclusion that the INA authorized the use of confidential information.

On remand, the IJ concluded after the first phase of the hearing that the public information failed to support detention, and, in the second phase, the government presented only a one-page "unclassified summary" and a sixteen-page "unclassified extract." Finding the new evidence to be insufficient and conclusory, the IJ ordered Al Najjar released on $8,000 bond. After three years and seven

months in custody, Al Najjar was released pursuant to an order signed by the Attorney General on December 15, 2000. The INS initially appealed the bond decision to the BIA, but the appeal was dismissed as withdrawn on August 3, 2001.

On July 18, 2001, before the appeal of the bond decision to the BIA was withdrawn, another panel of this Court issued a final merits decision in the first action, affirming the BIA's deportation order for Mazen and Fedaa Al Najjar. The panel found substantial evidentiary and legal support for the BIA's conclusions that the Al Najjars were ineligible for asylum on the basis of a fear of persecution and that they could not meet the great burden necessary for receiving withholding of deportation. See 257 F.3d at 1284-93. The Court also held that the BIA did not err in selecting the Al Najjars' testing countries for asylum and for withholding, or in finding Al Najjar ineligible for suspension of deportation due to his failure to remain in the United States for a continuous period of seven years. See id. at 1293-99. Finally, the panel held that the BIA properly rejected motions to remand on the bases that the IJ erroneously pretermitted Al Najjar's application for suspension of deportation and failed to consider claims under the United Nations Convention Against Torture. See id. at 1300-04. Notably, the panel's decision affirming Al Najjar's deportation did not rely in any way on confidential information or the allegations that Al Najjar was connected to terrorist groups.

The Court denied Al Najjar's motion to reconsider its decision and his motion for rehearing en banc on October 25, 2001. On November 13, 2001, the panel also denied Al Najjar's motion to stay issuance of the mandate pending a petition for a writ of certiorari to the Supreme Court. The mandate issued on the same day.

II.

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art. III, § 2. In turn, the "case or controversy" constraint imposes on federal courts a "dual limitation" known as "justiciability." United States v. Florida Azalea Specialists, 19 F.3d 620, 621 (11th Cir. 1994). The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context. See Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244 (11th Cir. 1998). "Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts." Id. (citing Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984) ("[T]he 'case or

controversy' requirement defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.")).

The doctrine of mootness derives directly from the case-or-controversy limitation because "an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L. Ed. 2d 491 (1969). As this Court has explained, "[p]ut another way, 'a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993)). If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. See, e.g., Hall v. Beals, 396 U.S. 45, 48, 90 S. Ct. 200, 201-02, 24 L. Ed. 2d 214 (1969) (per curiam). Indeed, dismissal is required because mootness is jurisdictional. See Florida Ass'n of Rehab. Facilities, 225 F.3d at 1227 n.14 (citing North Carolina v. Rice, 404 U.S. 244, 246, 92 S. Ct. 402, 404, 30 L. Ed. 2d 413 (1971) ("The

11

question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction.")). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." Id. at 1217 (citing Hall, 396 U.S. at 48, 90 S. Ct. at 201-02).

Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated and evading review, this exception is "narrow," Dow Jones & Co. v. Kaye, 256 F.3d 1251, 1256 (11th Cir. 2001), and applies only in "exceptional situations." Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct. 1660, 1669, 75 L. Ed. 2d 675 (1983)). In particular, the exception can be invoked only when "(1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Sierra Club v. Martin, 110 F.3d 1551, 1554 (11th Cir. 1997) (emphasis added). The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time.

III.

As in virtually every recent immigration case, it is necessary to begin the discussion by clarifying what law governs our analysis. In this case, that task is not difficult because another panel of this Court in the related first action against Al Najjar has already concluded that the transitional rules, enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), govern Al Najjar's deportation proceedings. See 257 F.3d at 1276-77.[1] Moreover, both parties advocated the use of IIRIRA's transitional rules in their briefs to the district court, and Al Najjar repeats the argument before this Court.[2]

---

[1] As this Court observed in the related first action: "Mazen's deportation proceedings commenced in 1985 when the INS issued an OSC against him. . . . Final orders of deportation were entered against Mazen and Fedaa in October 1999 when the BIA, by written opinion, affirmed the IJ's decision denying relief under the INA. See 8 C.F.R. § 241.31 (2001) (explaining that an order of deportation 'shall become final upon dismissal of an appeal by the Board of Immigration Appeals,' among other things). Thus, the Al Najjars are subject to the transitional rules, not the new 'permanent rules.'" 257 F.3d at 1276. Likewise, the district court in this case concluded the transitional rules applied because Al Najjar "was not subject to a final order of deportation until October 26, 1999, the date on which the BIA upheld the IJ's Deportation Order." 97 F. Supp. 2d at 1341.

In addition, this Court has held that § 2241 habeas review remains available for aliens whose deportation proceedings are governed by the transitional rules of IIRIRA. See Alanis-Bustamante v. Reno, 201 F.3d 1303, 1308 (11th Cir. 2000); Mayers v. INS, 175 F.3d 1289, 1301 (11th Cir. 1999).

[2] IIRIRA eliminated the distinction between "deportation" and "exclusion," placing both procedures under the heading "removal." Under the old law, Al Najjar was subject to "deportation" since he had initially been admitted lawfully to the United States. Because the instant case is proceeding under IIRIRA's transitional rules, we continue to use the old nomenclature and refer to the proceedings against Al Najjar as "deportation," rather than "removal."

The circumstances of this case have changed dramatically since Al Najjar began his quest for bond. When a panel of this Court issued a mandate affirming Al Najjar's deportation on November 13, 2001, this terminated the December 16, 1999 stay of Al Najjar's deportation and also undoubtedly resulted in a final order of deportation. Plainly, the final order of deportation gives the Attorney General unambiguous authority under controlling law to take Al Najjar into custody now without any regard to confidential information allegedly linking him to terrorist organizations. Therefore, the question addressed by the district court of whether the classified evidence could be considered in determining bond is moot, necessitating the vacatur of the district court's order and the bond granted by the IJ pursuant to that order.

As an initial matter, the November 13th mandate of this Court constitutes a final order of deportation for Al Najjar. Under the federal regulations governing deportation proceedings commenced prior to April 1, 1997, an order of deportation is "final and subject to execution" on the date when any of the following occurs: (1) a grant of voluntary departure expires; (2) an IJ enters an order of deportation without granting voluntary departure or other relief and the alien waives the right to appeal; (3) the BIA enters an order of deportation on appeal, without granting voluntary departure or other relief; or (4) <u>a federal district or appellate court</u>

14

affirms an administrative order of deportation in a petition for review or habeas corpus action. See 8 C.F.R. § 241.33(a) (2001) (emphasis added).[3]  There can be no question that the panel's decision in the related case affirmed the BIA's final administrative order of deportation for Al Najjar, and that order was final and executable as soon as the mandate issued.[4]

Moreover, the fact that this Court previously granted a stay of deportation does not affect the finality of the order now that the panel has rejected Al Najjar's merits appeal in the related case.  The stay was valid only pending a final determination by the appellate panel.  As this Court's predecessor has explained, the issuance of a mandate in a case automatically terminates a stay entered pending resolution of the appeal. See Texas & New Orleans R.R. v. B'hood of R.R.

---

[3]Although put into effect pursuant to IIRIRA, this regulation was explicitly made retroactive to apply to all proceedings commenced before April 1, 1997. See 8 C.F.R. § 241.30 ("Subpart C of 8 CFR part 241 applies to deportation proceedings commenced prior to April 1, 1997.").

[4]The government submits the district court erred in failing to recognize that the BIA's affirmance of the immigration judge's deportation order was already a final order of deportation under immigration law that triggered the application of regulations which authorized detention of Al Najjar, vested jurisdiction over his custody status in the INS District Director, and afforded additional deference to the Attorney General's parole decisions, see 8 C.F.R. §§ 212.5, 236.1(d), 241.33(a).  The government also suggests that the framework the district court used to analyze Al Najjar's due process rights was inconsistent with the district court's earlier recognition in its own opinion that, under 8 U.S.C. § 1101(a)(47)(B), Al Najjar was subject to a final deportation order when the BIA affirmed his deportation order on October 26, 1999. See 97 F. Supp. 2d at 1341.  We need not reach this issue because in any event the November 13th mandate undoubtedly constituted a final order affirming Al Najjar's deportation.

15

<u>Trainmen</u>, 307 F.2d 151 (5th Cir. 1962).[5] The logic behind this rule is quite simple: "[W]hen this Court's mandate issues, the appeal will no longer be pending and a final order on appeal will have been entered. Hence, by its terms, the [stay] will terminate upon the issuance of this Court's mandate." <u>Id</u>. at 162. Indeed, when Al Najjar requested a stay of deportation, he asked only (and could ask only) that the bar to his deportation remain in effect "during the pendency of this matter," or, phrased another way, "pending resolution of this Petition for Review." Quite simply, because the mandate has issued, the stay of deportation is necessarily vacated and Al Najjar is subject to a final order of deportation. <u>See also</u> 8 C.F.R. § 242.2(e) (1995) (stating that, when an alien who has been released pending a final order of deportation is taken into custody, "any outstanding bond shall be revoked and cancelled").[6]

---

[5]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[6]In this regard, we also observe that section 309(c)(1) of IIRIRA provided that "[s]ubject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date [April 1, 1997] (A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments." 8 U.S.C. § 1101 note (emphasis added). However, the succeeding provision in § 309(c)(4)(F), created an exception to this rule for transitional changes in judicial review applicable here, directing that "service of the petition for review shall not stay the deportation of an alien pending the court's decision on the petition, unless the court orders otherwise." <u>Id.</u> Thus, under IIRIRA's transitional rules in § 309(c)(4)(F), as well as IIRIRA's permanent rules in 8 U.S.C. § 1252(b)(3)(B), the service of a petition for judicial review does not stay the execution of a deportation order, which is why Al Najjar needed to ask this Court to stay the BIA's deportation order.

Now that the mandate has issued, the stay has terminated, and a final order has been entered, the government has the plain and unmistakable power to detain Al Najjar in order to execute the BIA's deportation order. Notably, this basis for detention is completely unrelated to any allegation that Al Najjar poses a threat to the national security due to his connections to the PIJ and wholly independent of the review of any classified information. See 8 U.S.C. § 1252(c) (1995); 8 U.S.C. § 1231(a)(2) (2002); 8 C.F.R. § 241.33(a) (2001). While it is possible that issues may arise later regarding how long the Attorney General can detain Al Najjar in furtherance of the execution of a final deportation order, it remains clear that the Attorney General now has the authority to detain Al Najjar without regard to any classified information.[7]

Indeed, the federal regulation governing detention emphasizes that aliens subject to deportation as a result of proceedings commenced before April 1, 1997 should generally be taken into custody and detained, with the discretion to release them entrusted to the INS District Director: "Except in the exercise of discretion by the district director, and for such reasons as are set forth in § 212.5(b) of this chapter, once an order of deportation becomes final, an alien shall be taken into

_____

[7]This authority is granted to the Attorney General under both pre- and post-IIRIRA law, and this case, involving a bond redetermination prior to a final and executable deportation order, plainly does not present the question of how long the Attorney General can detain an alien in order to execute a final deportation order. Thus, we do not address that issue here.

17

custody and the order shall be executed." 8 C.F.R. § 241.33(a) (2001).  We reiterate that, under the statute and regulations governing post-final order detention, the Attorney General, acting through the District Director, has the authority to take Al Najjar into custody without relying in any way on the allegation that Al Najjar presents a national security threat.

Because the Attorney General now has the unfettered power to detain Al Najjar, it is utterly unnecessary to take up the question addressed by the district court -- whether classified information can be used to deny bond in a pre-final order detention hearing.  In fact, the "case or controversy" requirement of Article III unambiguously forbids us from considering the question in the absence of a live dispute.  Any opinion on the matter would be purely advisory. See, e.g., Florida Ass'n of Rehab. Facilities, 225 F.3d at 1217.  This appeal is therefore moot.

The former Fifth Circuit recognized this basic principle in binding precedent fifty years ago, when, in one of the first cases decided under the INA of 1952,[8] it dismissed as moot an alien's habeas corpus petition seeking release on bond after a final order of deportation was entered: "We think it clear . . . that the deportation order is now final; that the question raised by his appeal, whether the court erred in

---

[8]Although the Fifth Circuit's opinion does not discuss the background of the case, a subsequent opinion from the Southern District of New York filed after Spinella's deportation described the history of his case and explained that he was deported under the INA of 1952. See Spinella v. Esperdy, 188 F. Supp. 535, 536-37 (S.D.N.Y. 1960).

18

denying him bond pending the deportation proceedings, has become moot; and that the appeal should be dismissed." United States ex rel. Spinella v. Savoretti, 201 F.2d 364 (5th Cir. 1953). Although immigration law has changed in many ways since 1953, this case is moot for precisely the same reason enunciated in Spinella. The government currently has the unmistakable power to take Al Najjar into custody and deport him from the United States.

To the extent either party suggests that the appeal is not yet moot because there exists at least the possibility that the question of classified material could arise again in the future, we remain unpersuaded. In essence, this contention amounts to an argument that we should apply the mootness doctrine's narrow exception for controversies that are capable of repetition yet evading review. This argument fails because the controversy at issue in the district court's opinion cannot arise again necessarily, as Al Najjar is now, and will be, subject to a final order of deportation.

Once a final order of deportation is entered, an alien who may seek bond must do so through a process entirely distinct from that used before a final order is in place. While bond proceedings before a final order are handled by an IJ in adversary proceedings with appeal to the BIA, see 8 C.F.R. § 242.2(d) (1995), bond after the entry of a final order is obtained solely at the discretion of the

District Director. See 8 C.F.R. § 241.33(a) (2001); see also In re Valles, 21 I. & N. Dec. 769, 772 (BIA 1997) ("[Indeed,] an Immigration Judge is divested of jurisdiction over a bond proceeding . . . upon the entry of an administratively final order of deportation. In [this case], jurisdiction over bond proceedings vests with the district director."). Simply put, a post-final order bond determination is a completely different entity presented to a completely different decision-maker on a wholly different foundation than the pre-final order bond determination that is the subject of this appeal.

The narrow exception for actions that are capable of repetition yet evading review applies only in the exceptional circumstance in which the same controversy will recur and there will be inadequate time to litigate it prior to its cessation. See, e.g., Sierra Club, 110 F.3d at 1554. Neither claim has any merit. At this time, we may not hypothesize whether circumstances will eventually require that the question of confidential information be addressed. The mere possibility that this may happen cannot justify the exercise of jurisdiction over the case. See Westmoreland v. Nat'l Transp. Safety Bd., 833 F.2d 1461, 1463 (11th Cir. 1987) (explaining that potential for harm must be more than "speculative" for mootness exception to apply). Moreover, should any review somehow become necessary, there is no reason to believe that there will be either inadequate time or an

inadequate forum in which to litigate the issue. The narrow exception to the mootness doctrine simply does not apply here.

When a case becomes moot on appeal, under controlling law the Court of Appeals must not only dismiss the case, but also vacate the district court's order. This practice "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." Atlanta Gas Light Co. v. Fed. Energy Regulatory Comm'n, 140 F.3d 1392, 1402 (11th Cir. 1998) (quoting United States v. Munsingwear, 340 U.S. 36, 40, 71 S. Ct. 104, 107 (1950)). As this Court has explained, the policy of vacating the underlying district court order is "premised on the equitable principle that 'a party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.'" Id. at 1403 (quoting U.S. Bancorp Mortgage Co. v. Bonner Mail P'ship, 513 U.S. 18, 25, 115 S. Ct. 386, 391 (1994)). It is only the "vagaries of circumstance," namely that a final order of deportation has been entered, the mandate has issued, and the stay of deportation terminated, that prevent this Court from deciding the instant appeal. The government should not be forced to acquiesce in the district court's judgment without having a chance for the merits of that judgment to be resolved on appeal. Similarly, to the extent he is challenging

21

the district court's statutory ruling on his cross-appeal, Al Najjar should not be forced to acquiesce in a moot, adverse decision. The district court order is therefore vacated, and it can have no precedential value. Similarly, the bond decision of the IJ, entered on remand from the district court's order, is also vacated as moot.

Without jurisdiction, we are barred from reaching the merits of the Attorney General's appeal and Al Najjar's cross-appeal. Our decision does not detract from the recognition that this case, if live, would raise a number of extremely significant issues involving immigration law and procedure, national security and classified information, and due process of law. For example, the government says that the district court erred in declining to follow this court's decision in United States ex rel. Barbour, 491 F.2d 573 (5th Cir. 1974), which rejected an alien's contentions that the consideration of ex parte security risk information violated his due process rights; and in concluding that the prospect of discretionary relief in a bond redetermination hearing after the IJ has issued a deportation order creates a liberty interest from which due process protections arise; and that it improperly considered, and then inadequately weighed, the factors under Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), concerning the risk of an erroneous adjudication and the government's interest in protecting national

security without so much as even examining the confidential evidence at issue; and that it wrongly concluded that the procedures used by the IJ were insufficient even though Al Najjar received a summary of the confidential material and had an opportunity to rebut it; and, finally, that it disregarded the Attorney General's discretion in holding that the INS would have to show more than mere membership in or affiliation with a terrorist group in order to detain Al Najjar. As compelling as these issues may be, any opinion on our part would be purely advisory and wholly unnecessary in the absence of a live controversy, and the constitutional limitation of a case or controversy bars us from setting down that road.

IV.

In sum, the government's appeal and Al Najjar's cross-appeal must be and are DISMISSED as moot, and the order of the district court and the resulting bond decision of the Immigration Judge are hereby VACATED.