SIERRA CLUB, Southern Organizing Committee for Economic and Social Justice, Georgia Coalition for the People's Agenda, Environmental Defense, Petitioners–Appellants,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent–Appellee.

State of Georgia, Intervenor.

No. 02–11188.

United States Court of Appeals, Eleventh Circuit.

Dec. 24, 2002.

S. Wesley Woolf, Southern Environmental Law Center, Atlanta, GA, J. David Farren, Chapel Hill, NC, Robert E.

Yuhnke, Boulder, CO, for Petitioners–Appellants.

Norman L. Rave, Jr., U.S. Dept. of Justice, Washington, DC, for Respondent–Appellee.

Timothy P. Duggan, Jefferson City, MO, Donald Trahan, La. Dept. of Environmental Quality, Baton Rouge, LA, A. Benjamin Goldgar, Chicago, IL, for Amicus Curiae.

Diane L. Deshazo, Atlanta, GA, Patricia T. Barmeyer, Lewis B. Jones, King & Spalding, Atlanta, GA, for Intervenor.

Before BLACK and MARCUS, Circuit Judges, and MIDDLEBROOKS *, District Judge.

BLACK, Circuit Judge:

Several organizations collectively petitioned for review of a final order of the Environmental Protection Agency (EPA) determining the Atlanta Motor Vehicle Emissions Budget (MVEB) to be adequate for transportation conformity. In response, EPA moved to dismiss the petition as moot. Because we conclude the petition for review is now moot, we will grant Respondent's motion and dismiss the petition.

### I.

The Clean Air Act, 42 U.S.C. §§ 7401–7671q, establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation. The Clean Air Act (CAA) charges EPA with identifying dangerous air pollutants and formulating the National Ambient Air Quality Standards (NAAQS) to specify the maximum permissible concentration of those pollutants in the ambient air. For purposes of this petition for review, the only relevant pollutant is ground-level ozone resulting from motor vehicle emissions.[1]

The CAA requires each State to bring its air quality into attainment with the NAAQS. To effectuate this goal, the CAA classifies air quality control regions and assigns each nonattaining region an attainment deadline according to its classification. Regions determined to be nonattainment regions are classified into the following five groups: marginal, moderate, serious, severe, and extreme. *Id.* § 7511(a)(1). Atlanta was classified as a serious ozone nonattainment area, with a statutory attainment deadline of November 15, 1999.

To bring about attainment of the NAAQS, the CAA creates an extensive planning and review procedure. States must draft State Implementation Plans (SIPs) specifying the emission limitations necessary for attainment, maintenance, and enforcement of the NAAQS. *Id.* § 7410. A SIP is submitted to EPA for approval, and EPA approves SIPs based in part on whether the specified emissions controls will enable the region to achieve the NAAQS by the applicable attainment deadline. *Id.* § 7410(k). In addition, the CAA requires specific emissions controls based upon a region's nonattainment classification, and these emissions controls must be included in the SIP. *Id.* § 7511a. For example, a severe nonattainment area is required to implement a Reformulated Gasoline (RFG) program not required for a serious nonattainment area. *See id.* § 7545(k). States must periodically revise their SIPs and receive EPA approval for the revisions. *Id.* § 7410(a)(2)(H).

---

* Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

1. Ozone is the result of a reaction among volatile organic compounds (VOCs), nitrogen oxides (NOx), and oxygen in sunlight.

The extensive 1990 Amendments to the CAA bolstered the planning and review requirements in various ways. Prior to 1990, States failed to meet their NAAQS attainment deadlines in part because federal agencies ignored the deadlines when approving federal transportation programs that affected motor vehicle emissions, which in turn hampered attainment. With the 1990 amendments, Congress created new conformity requirements with which all transportation plans and projects must comply. Generally, the federal government may not approve or fund any transportation program or project unless it has been found to conform to the applicable SIP for the region. *Id.* § 7506(c). The Motor Vehicle Emissions Budget (MVEB), a component part of each SIP, is central to transportation conformity decisions. The MVEB is a projection of future emissions from motor vehicles for a given region. *Id.* § 7502(c)(4). The MVEB is thus at the intersection of the CAA and transportation planning. A SIP, along with its component MVEB, effectively limits future transportation investments in a region so transportation planning will be consistent with achieving the NAAQS by the applicable deadline.

In addition to the conformity requirements, the 1990 CAA Amendments contained a number of other incentives for States to meet their attainment deadlines. The most important of these is the "bump-up" provision, under which a nonattainment area that fails to meet the attainment deadline for its classification is bumped-up "by operation of law" to a higher classification. *Id.* § 7511(b)(2). While the higher classification results in an extension of the attainment deadline, it also mandates whatever specific emissions controls apply to the new classification.[2]

Timely review and approval of a region's SIP is essential to the region's transportation planning because all transportation decisions must conform to the SIP. In the ordinary course of business, however, EPA takes between 12 and 18 months to review and approve a new SIP. To allow for effective transportation planning in the interim between submission of a new SIP and its approval, EPA regulations authorize EPA to approve an MVEB standing alone via a preliminary finding that the MVEB is adequate for transportation conformity purposes. *See* 40 C.F.R. § 93.118 (2002). The effect of such an MVEB adequacy determination is to allow federal agencies to make conformity determinations based on the MVEB even before the proposed SIP is approved by EPA.[3] EPA may make an adequacy determination for an MVEB only when, *inter alia,* the MVEB is part of a SIP submitted to EPA for review and the MVEB is consistent with the SIP's control measures and the applicable requirements for attainment. EPA describes an adequacy determination as the result of a "cursory review" using "minimum criteria." *See* Transportation Conformity Rule Amendments: Flexibility and Streamlining, 62 Fed.Reg. 43,780, 43,782 (Aug. 15, 1997). Once EPA finally approves a SIP, the SIP (along with its constituent MVEB) becomes the governing plan for conformity purposes, *see* 40 C.F.R. § 93.118(a), thereby superseding the interim determination that the stand-

---

**2.** There are a few cases in which a failure to meet the attainment deadline will not result in reclassification. It is undisputed, however, that none of these limited exceptions applies in this case.

**3.** In certain circumstances, an MVEB determined to be adequate may be relied upon for transportation conformity purposes even if EPA subsequently rejects the proposed SIP. *See* 40 C.F.R. § 93.120 (2002). This possibility is examined in more detail in Part II.B, *infra.*

alone MVEB is adequate for transportation conformity.

One of the chief difficulties in implementing the 1990 CAA Amendments related to the problem of ozone transport. Many States were unable to complete their SIPs by the statutory deadlines because they lacked necessary information about interstate ozone transfer—the process by which ozone precursors move from upwind to downwind areas. In response to the scientific difficulties posed by ozone transport, EPA formed the Ozone Transport Assessment Group (OTAG) in 1995. OTAG completed its review in June of 1997, concluding that nitrogen oxide (NOx) reductions in upstate areas were the key to controlling ozone transport.

In response to OTAG's work, EPA issued a final rule known as the NOx SIP Call Rule in October 1998. *See* Finding of Significant Contribution and Rulemaking for Certain States in the Ozone Transport Assessment Group Region for Purposes of Reducing Regional Transport of Ozone, 63 Fed.Reg. 57,356 (Oct. 27, 1998) (NOx SIP Call Rule). The NOx SIP Call Rule required 23 upwind jurisdictions to revise their SIPs to prohibit ozone precursor emissions that contributed to nonattainment of the ozone NAAQS in downwind States. The original NOx SIP Call Rule required the reductions in upwind States to be effective by 2003. The D.C. Circuit upheld much of the rule, and it also extended the deadline to 2004. *See Michigan v. EPA,* 213 F.3d 663 (D.C.Cir.2000); *Michigan v. EPA,* No. 98–1497, 2000 WL 1341477 (D.C.Cir. Aug. 30, 2000) (extending deadline under the NOx SIP Call Rule to 2004).

Although the NOx SIP Call Rule would reduce ozone transport from upwind States by 2004, that would be too late for downwind areas classified as serious nonattainment regions, with attainment deadlines of November 15, 1999.

EPA therefore issued its Extension Policy. *See* Extension of Attainment Dates for Downwind Transport Areas, 64 Fed. Reg. 14,441 (March 25, 1999) (Extension Policy). The Extension Policy interpreted the CAA to allow EPA to grant extensions to moderate and serious areas that suffered from ozone transport, thereby postponing their attainment deadlines without reclassifying those areas to higher levels. EPA would grant deadline extensions only after notice and comment rulemaking for each region, usually as part of a SIP review. According to EPA, the Extension Policy preserved the responsibilities of downwind areas under the statute without penalizing them for the impossibility of reducing ozone transported from upwind states.

In July 2001, Georgia submitted to EPA a proposed SIP that would meet an attainment deadline of 2004. In so doing, Georgia's SIP requested an extension of its 1999 deadline (as a serious nonattainment area) pursuant to EPA's Extension Policy. In December 2001, EPA informed Georgia that it was finding the proposed MVEB in the SIP adequate for transportation conformity purposes. *See* Adequacy Status of the Atlanta, Georgia, Ozone Attainment Demonstration for Transportation Conformity Purposes, 67 Fed.Reg. 887 (Jan. 8, 2002) (Adequacy Determination).

EPA based its MVEB Adequacy Determination on the 2004 attainment date in Georgia's proposed SIP because that deadline would inevitably apply to the SIP, whether or not EPA granted Georgia's request for an extension pursuant to the Extension Policy. EPA reasoned either (1) Georgia would receive an extension under the Extension Policy, which would have delayed its attainment deadline to 2004 (in keeping with the NOx SIP Call Rule as extended by the D.C. Circuit), or (2) Georgia would be bumped-up to severe

status, which would have delayed its attainment deadline to 2005 under the CAA. In both instances, Georgia would not need to demonstrate attainment before 2004, so it was appropriate to find the MVEB was adequate based upon the 2004 attainment date in the proposed SIP.

Petitioners then commenced this action on March 7, 2002, challenging EPA's December 2001 Adequacy Determination for the Atlanta MVEB. EPA subsequently approved Georgia's SIP on April 29, 2002. *See* Approval and Promulgation of Implementation Plans: Georgia; 1–Hour Ozone Attainment Demonstration, Motor Vehicle Emissions Budgets, Reasonably Available Control Measures, Contingency Measures and Attainment Date Extension, 67 Fed. Reg. 30,574 (May 7, 2002) (SIP Approval). In doing so, EPA granted Georgia an extension until 2004 of its attainment deadline, pursuant to the Extension Policy. *See id.*

## II.

According to EPA, its approval of Georgia's SIP on April 29, 2002, supersedes its MVEB Adequacy Determination, thereby rendering this case moot. Now that the SIP has been approved, EPA claims its MVEB Adequacy Determination is of no further legal consequence. According to Petitioners, however, nothing about the SIP Approval supersedes the Adequacy Determination, since the SIP includes the very same MVEB that EPA found adequate for transportation conformity. Furthermore, Petitioners argue the MVEB Adequacy Determination may continue to have legal effect for transportation conformity decisions if EPA's approval of the SIP is invalidated by this Court.[4]

 The rule that federal courts may not decide cases that have become moot

derives from Article III's case and controversy requirement. *See Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) ("The doctrine of mootness derives directly from the case or controversy limitation because an action that is moot cannot be characterized as an active case or controversy.") (internal quotation omitted); *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir.2001) (same). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1336. Dismissal of a moot case is required because mootness is jurisdictional. *Id.* "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir.2000).

In what follows,. we first conclude the SIP Approval supersedes the Adequacy Determination and renders this case moot. Next, we reject Petitioners' suggestion that despite the SIP Approval, EPA might somehow revive its Adequacy Determination and rely on the stand-alone MVEB for transportation conformity purposes. Finally, we determine that Petitioners' other arguments against finding this case moot are incorrect.

## A.

 Petitioners assert the Adequacy Determination is not superseded by the SIP Approval because the MVEB that was the subject of the Adequacy Determination is the same as the MVEB in the now-approved SIP. This position is predicated upon a misunderstanding of the limited scope of our review of EPA's actions. Pe-

---

**4.** These Petitioners have filed a separate petition for review of EPA's final action approving the SIP. *See Southern Org. Comm. v. U.S.* *EPA*, No. 02–13486 (11th Cir. filed June 26, 2002).

titioners seek to avoid the mootness problem by having us assert jurisdiction over the MVEB, whether standing alone or as a component of the SIP. Unfortunately, we cannot review the MVEB itself; our jurisdiction is limited to EPA's final action that determined the MVEB was adequate for transportation conformity purposes. 42 U.S.C.A. § 7607(b)(1) (providing federal court review of final actions by the EPA Administrator). This limitation on the scope of review is a reflection of the division of labor between individual States and EPA inherent in the regime of cooperative federalism created by the CAA. *See United States v. Morrison,* 529 U.S. 598, 661, 120 S.Ct. 1740, 1777, 146 L.Ed.2d 658 (2000) (noting CAA as an example of cooperative federalism); *Michigan v. E.P.A.,* 268 F.3d 1075, 1083 (D.C.Cir.2001) (describing the CAA as "an experiment in cooperative federalism"); *Envtl. Defense Fund, Inc. v. E.P.A.,* 82 F.3d 451, 468–69 (D.C.Cir.1996) (discussing CAA's regime of state and federal cooperation and integrated planning). The CAA's regulatory regime leaves certain acts—like creating an MVEB and a SIP—to the States, while allowing the federal government to review and approve those State acts. The CAA gives the federal courts power to review regulatory decisions, but only decisions of the EPA, not the States. 42 U.S.C. § 7607(b). If we were to review the MVEB *qua* MVEB—rather than reviewing only EPA's Adequacy Determination—we would undermine the cooperative federalism Congress has seen fit to establish in the CAA.

There are two, discrete EPA actions relevant to this case: (1) EPA's action finding the MVEB to be adequate for transportation conformity purposes, pursuant to 40 C.F.R. § 93.118(e), *see* Adequacy Determination, 67 Fed.Reg. 887; and (2) EPA's approval of the SIP, effected by notice and comment rulemaking. *See* SIP Approval, 67 Fed.Reg. 30,574.[5] EPA has consistently recognized that these separate actions are different from each other. At the time it published notice of its Adequacy Determination in the *Federal Register,* EPA noted, "an adequacy review is separate from EPA's completeness review [of a SIP]." Adequacy Determination, 67 Fed. Reg. 887. EPA later described the final SIP Approval as "a separate action from EPA's prior adequacy determination [that] is based upon different analyses and standards." SIP Approval, 67 Fed.Reg. at 30,-576. These are not merely self-serving statements bolstering Respondent's litigation position; the difference between an adequacy determination and a SIP approval is inherent in the relevant EPA regulations.

Under the operative regulations, a finding that an MVEB in a submitted SIP is adequate for transportation conformity purposes is a temporary determination designed to enable transportation planning to proceed while the submitted SIP is fully reviewed by EPA. Generally speaking, the CAA requires transportation conformity decisions to be based on the applicable implementation plan, that is, the SIP then in effect. *See* 42 U.S.C. § 7506(c); 40 C.F.R. § 93.118(a). Because of the delay associated with review and approval of a SIP, EPA will make a preliminary adequacy determination about the MVEB in the submitted SIP. 40 C.F.R. § 93.118(e).

5. These are discrete agency actions despite the identity of the stand-alone MVEB subject to the Adequacy Determination and the MVEB contained in the now-approved SIP. The stand-alone MVEB and the MVEB in the SIP must be identical because EPA's regulations permit a preliminary adequacy determi-nation only with respect to the MVEB in a SIP submitted to EPA for its approval. *See* 40 C.F.R. § 93.118(e) (authorizing adequacy determinations of "[m]otor vehicle emission budgets in submitted control strategy implementation plan revisions and submitted maintenance plans").

Under the regulations, the effect of an adequacy determination is to require transportation conformity decisions to be based on the MVEB in the submitted SIP. 40 C.F.R. § 93.118(e)(1) ("Consistency with the motor vehicle emissions budgets in submitted control strategy implementation ... plans must be demonstrated if EPA has declared the motor vehicle emissions budget(s) adequate for transportation conformity purposes....").

The phrase "in the submitted SIP" is crucial to understanding the operation of the regulations. Section 93.118(e)'s authorization to make transportation conformity decisions based upon an adequate MVEB is limited to adequate MVEBs in "submitted" SIPs. Until a SIP is submitted, no adequacy determination can be made. More importantly, once a SIP is approved, it is no longer a "submitted" SIP; [6] it becomes the applicable implementation plan upon which transportation conformity decisions must be based. 42 U.S.C. § 7506(c); 40 C.F.R. § 93.118(a).

EPA has already approved Georgia's SIP. Once it did so, its earlier MVEB Adequacy Determination—the subject of Petitioners' challenge here—became

moot.[7] The only effect of an adequacy determination is to allow transportation planning to be based upon conformity to the MVEB while the submitted SIP is reviewed. Because the SIP has been approved, transportation conformity decisions must be based upon the new SIP, not the stand-alone MVEB.[8] At this juncture, vacating EPA's MVEB Adequacy Determination would accomplish nothing because transportation conformity decisions cannot now be based upon the stand-alone MVEB.[9] The petition for review of the Adequacy Determination is now moot.

### B.

▮ Petitioners' strongest counter-argument is their suggestion that there might be circumstances in which EPA could revive its Adequacy Determination and begin using the stand-alone MVEB, rather than the now-approved SIP, for transportation conformity decisions. Petitioners cite 40 C.F.R. § 93.120, which under certain circumstances permits transportation conformity decisions to be based upon an MVEB determined to be adequate, even if the submitted SIP containing the MVEB is later disapproved by EPA.[10]

---

6. "Submit" is defined as "to present or propose to another for review, consideration, or decision." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1173 (1999).

7. Our conclusion is bolstered by considering the jurisdictional footing on which this case would stand if, in the companion case, this Court were to find the Extension Policy to be unlawful and vacate the SIP Approval. If that were to occur, there would be no further relief for us to give Petitioners in this case.

8. This is true even though this Court has stayed the SIP Approval in the Petitioners' companion case. The effect of the stay is to prevent transportation planning based on the approved SIP. That does not mean that anyone can revert to the stand-alone MVEB for transportation conformity decisions. Whether or not transportation planning on the basis

of the SIP has been stayed, EPA approval of the SIP renders it no longer "submitted," and under 40 C.F.R. § 93.118(a), the stand-alone MVEB cannot now be used for transportation conformity decisions.

9. No transportation conformity decisions have been made on the basis of the stand-alone MVEB. We therefore need not decide whether a previous transportation conformity decision based on the stand-alone MVEB would render this petition non-moot.

10. During oral argument, Petitioners disputed the authority on which they relied for this argument. In their reply brief, Petitioners cited § 93.120 for the proposition that, under certain circumstances, an MVEB found to be adequate may be relied upon even if the full SIP is later disapproved. At oral argument, however, counsel disclaimed any reliance on

Contrary to Petitioners' position, the governing statutory and regulatory regime forecloses any future reliance on the MVEB as a result of EPA's Adequacy Determination. MVEB adequacy determinations are interim measures that allow transportation planning to proceed while a SIP is under review by EPA. Once a SIP is approved, it becomes the applicable implementation plan governing transportation conformity decisions. 42 U.S.C. § 7506(c); 40 C.F.R. § 93.118(a). If a submitted SIP is approved by EPA, then a prior adequacy determination is superseded and has no effect.

In the event a submitted SIP is rejected by EPA, the regulations contain a savings provision that allows EPA to preserve the legal effectiveness of an adequacy determination—despite disapproving the SIP—by making a protective finding. 40 C.F.R. § 93.120. Section 93.120(a)(2) governs SIP disapprovals *without* protective findings, and it displaces the transportation planning procedures authorized in § 93.118(e), the regulation permitting transportation planning on the basis of an MVEB found to be adequate. No regulation expressly provides for transportation conformity decisions in cases where EPA disapproves a SIP *with* a protective finding. The inference to be drawn from the regulatory framework, however, is that a protective finding permits transportation planning to proceed as if the SIP had not been disapproved, i.e. on the basis of an MVEB found to be adequate, as authorized by § 93.118(e).

The savings provision of § 93.120, however, applies at the time EPA disapproves a submitted SIP. *See* 40 C.F.R. § 93.120(a)(1) (referring to disapprovals of a SIP "with or without a protective finding"); 40 C.F.R. § 93.120(a)(2) (referring to disapprovals of a SIP "without making a protective finding"). No regulation authorizes EPA to make a protective finding other than in conjunction with a SIP disapproval. Even the definition of a protective finding limits that action to a "submitted control strategy implementation plan revision," 40 C.F.R. § 93.101, meaning a protective finding could not be made once a SIP is approved. In this case, EPA has approved the SIP and made no protective finding; at this juncture, the savings provision can no longer apply. EPA could not now allow transportation conformity decisions to be based on the stand-alone MVEB, even if a court were to invalidate the SIP, because EPA cannot issue a protective finding after approving the SIP.

SIP *disapproval*—which triggers the possible application of the savings provisions contained in 40 C.F.R. § 93.120(b)— should not be confused with the *invalidation* of the SIP by a court. Once a SIP is approved by EPA, any prior adequacy determination is superseded. If a court were later to invalidate EPA's approval of the SIP, the MVEB would be invalidated as well, and EPA would have no authority to revert to the superseded stand-alone MVEB for transportation conformity decisions. The regulations that permit continued reliance on the MVEB apply when a

§ 93.120, instead citing 40 C.F.R. § 93.118(a) as raising the possibility the MVEB might somehow be revived if the now-approved SIP were vacated in a court challenge. Section 93.118(a) requires all transportation planning to be consistent with the MVEB in the "applicable implementation plan." 40 C.F.R. § 93.118(a); *see also* 42 U.S.C.A. § 7506(c)(1) (requiring transportation conformity with SIPs approved by EPA). While § 93.118(a)

also refers to consistency with an "implementation plan submission," that is of no help to Petitioners' argument in this case, because there is no implementation plan submission here. Rather, the SIP in question has been approved and can no longer be said to be under submission; transportation planning must now be done on the basis of the approved SIP or not at all.

submitted SIP is disapproved, not when it is invalidated by court order. *See id.* § 93.120 (governing "[c]onsequences of control strategy implementation failures"). If EPA were to attempt to revive the stand-alone MVEB, it would need to undertake some new agency action, which could be challenged in a new petition for review. The "remote possibility" of such EPA action cannot render the present case non-moot. *See Al Najjar*, 273 F.3d at 1336.

## C.

Finally, we briefly consider and reject several remaining arguments that this case is not moot. For one, this is not a case in which a defendant attempts to render an action moot by voluntarily ceasing the challenged conduct. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Where a defendant voluntarily ceases challenged conduct, the case is not moot because nothing would prevent the defendant from resuming its challenged action. In this case, however, EPA has not voluntarily ceased the challenged action. It was inevitable that EPA would take some final action, possibly superseding the MVEB Adequacy Determination, once Georgia submitted its SIP. More importantly, and as explained above, there is now no possibility of EPA's "resuming" the challenged action because the MVEB Adequacy Determination has been superseded as a result of the graduated regulatory regime established by the governing statute and regulations.

Nor is this a case like those in which a government agency facing a challenge to a statute attempts to amend the statute in order to moot the challenge. *See, e.g., Horton v. City of St. Augustine*, 272 F.3d 1318 (11th Cir.2001). In that case, the city amended an ordinance that had been challenged by the plaintiff. The Court examined the original ordinance and the amendment and concluded it "did not so fundamentally alter either its statutory framework or the gravamen of Horton's fundamental challenges as to render the original controversy moot." *Id.* at 1327–28. *Horton* differs from this case because the object of the legal challenge in *Horton* was the city's ordinance itself, however slightly it was altered by subsequent amendments. As explained above, the subject of this legal challenge is *not* the MVEB but rather the EPA's determination that the MVEB was adequate for transportation conformity purposes, an agency action of limited duration and effect. In addition, if *Horton* had become moot upon amendment of the ordinance, then the city could have always escaped a legal challenge to its ordinance by making immaterial amendments to it. In this case, EPA cannot similarly avoid judicial review of the underlying legal issue—the lawfulness of the Extension Policy—because that issue will be squarely presented in any challenge to a SIP approval. *See, e.g., Sierra Club v. E.P.A.*, 294 F.3d 155 (D.C.Cir.2002) (finding, in the context of a challenge to EPA's approval of three SIPs for the Washington Metropolitan Area, that the Extension Policy is unlawful under the CAA).[11]

Finally, this is not a case in which the same agency action persists across discrete agency orders. In *Kescoli v. Bab-*

---

**11.** The related exception to the mootness doctrine for those cases "capable of repetition, yet evading review" has no application in this case. *Soliman*, 296 F.3d at 1243. The lawfulness of the Extension Policy can be reviewed in any challenge to EPA's approval of a SIP. Thus, even if the allegedly improper reliance on the Extension Policy could be repeated, it would not evade review, and the exception to the mootness doctrine does not apply.

*bitt,* 101 F.3d 1304 (9th Cir.1996), a plaintiff challenged an Office of Surface Mining permit to a coal company on the ground that a special condition in the permit did not adequately protect an ancient native American burial site. While the appeal was pending, the permit in question expired. The Office of Surface Mining had issued a new permit, however, which contained the same special condition challenged by the plaintiff. The Ninth Circuit concluded that, despite the expiration of the permit, the special condition was still in effect, so the case was not moot. In doing so, the Ninth Circuit explicitly distinguished cases in which the challenged agency action had concluded. *See id.* at 1309. This case differs from *Kescoli* in precisely this respect. EPA's Adequacy Determination was an action of limited legal effect, and that effect ended when the SIP Approval superseded the Adequacy Determination. *See American Rivers v. Nat'l Marine Fisheries Serv.,* 126 F.3d 1118, 1124 (9th Cir.1997) (finding a case moot where later agency action superseded the agency action under judicial review).

### III.

Petitioners' goal appears to be to force EPA to bump-up Atlanta to severe nonattainment status, with all that a reclassification would entail. If EPA cannot extend Atlanta's attainment deadline under the Extension Policy, then it most likely will need to reclassify Atlanta. If, however, we were to review the MVEB Adequacy Determination, declare the Extension Policy invalid, and vacate the Adequacy Determination, we would be issuing an advisory opinion. EPA's SIP Approval has rendered the Adequacy Determination a legal nullity, thereby mooting this case and depriving us of jurisdiction. Vacating EPA's Adequacy Determination would change nothing, so we will dismiss the petition as moot.

Respondent's motion to dismiss is GRANTED and the petition for review is DISMISSED AS MOOT.