[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 19, 2006
THOMAS K. KAHN
CLERK

No. 05-17123
Non-Argument Calendar

_____

BIA No. A95-886-120

ENRIQUE OCTAVIO MORALES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 19, 2006)

Before DUBINA, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Petitioner Enrique Octavio Morales, through counsel, seeks review of the Board of Immigration Appeal's ("BIA") order affirming the Immigration Judge's ("IJ") final order denying claims for asylum, 8 U.S.C. § 1158, withholding of removal under the Immigration and Nationality Act ("INA") § 241(b)(3)(A), 8 U.S.C. 1231(b)(3), and the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c). Because Morales does not make any argument or cite to any law with respect to withholding of removal and CAT relief, he has waived those issues on appeal, and they are not before us. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (holding that issues not argued on appeal are deemed waived).

On appeal, Morales first argues that the IJ violated his right to due process by failing to consider evidence he presented in support of his asylum application. The government responds that Morales's due process claim fails because he did not raise it in his brief to the BIA. In reply, Morales argues that he is entitled to present additional issues and evidence to show that he was prejudiced by ineffective assistance of counsel and by the IJ's conduct and thereby effectively prevented from developing an adequate record. Next, Morales argues that the IJ's conclusion that he did not demonstrate past persecution or a well-founded fear of future persecution is not supported by substantial, probative, or reasonable evidence.

2

I.

"We review subject-matter jurisdiction *de novo.*" *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003).

To the extent that Morales is appealing the IJ's treatment of his documentary evidence in an effort to challenge the IJ's adverse credibility finding, that argument is moot because the BIA reversed the IJ's adverse credibility finding. Therefore, there is no question as to the credibility of his testimony. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 -1336 (11th Cir. 2001) (applying the doctrine of mootness to an issue in the context of an immigration petition). However, to the extent that Morales is raising this issue on appeal for other substantive reasons, he would had to have administratively exhausted his remedies.

"The exhaustion requirement applicable to immigration cases is found in 8 U.S.C. § 1252(d)(1), which provides that '[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.'" *Sundar v. INS*, 328 F.3d 1320, 1323 (11th Cir. 2003). We have "interpreted that requirement to be jurisdictional, so we lack jurisdiction to consider claims that have not been raised before the BIA." *Id.*

Constitutional challenges and some due process claims do not require exhaustion because the BIA does not have the authority to adjudicate those claims. *Id.* at 1325. However, where the BIA can provide a remedy to the constitutional

3

claim, "the exhaustion requirement applies with full force." *Id.* (holding that an alien should have exhausted his due process claim that the IJ's and BIA's application of an immigration statute violated the Constitution, because "[i]t was within the BIA's authority to reconsider and change its decision").

"Due process is satisfied only by a full and fair hearing." *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987). The INA provides that "the alien shall have a reasonable opportunity . . . to present evidence on the alien's own behalf . . . ." INA § 240(b)(1), (4)(B), 8 U.S.C. § 1229a(b)(1), (b)(4)(B).

Morales's due process challenge is procedural in nature as he is complaining about the IJ's handling of documentary evidence and arguing that the BIA could have provided a remedy. Thus, the exhaustion requirement applies to Morales's due process claim. *See Sundar*, 328 F.3d at 1325. As the government correctly notes, however, Morales did not mention his due process claim in either his notice of appeal or brief before the BIA, and, therefore, he has failed to exhaust his administrative remedies with respect to his due process claim.

Even assuming Morales's due process claim did not require exhaustion, we conclude from the record that his hearing complied with due process. The transcript reveals that although Morales untimely filed his documentary evidence, the IJ admitted such evidence in the record. Additionally, the IJ acknowledged the documentary evidence but noted that it did not contain any corroborative evidence

4

from a law enforcement authority to confirm the incidents testified to by Morales. Thus, nothing in the transcript indicates that the IJ denied Morales's right to present evidence. For these reasons, we dismiss Morales's petition in this respect.

Last, Morales may not assert a claim of ineffective assistance of counsel here because he did not raise this claim before the BIA, and he raises this issue for the first time before us in his reply brief. *See United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir.2002) (holding that arguments raised for the first time in a reply brief are not properly before a reviewing court). Thus, the only issue on appeal is whether the IJ erred in denying Morales's asylum claim.

II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA adopted the IJ's decision, and made some findings of its own, we review both.

The IJ made an adverse credibility finding, but the BIA expressly reversed that determination, so the following analysis considers the testimony as credible.

To the extent that the BIA's decision was based on a legal determination, review is *de novo*. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is 'supported by

5

reasonable, substantial, and probative evidence on the record considered as a whole.'" *Najjar*, 257 F.3d at 1283-84 (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." *Mazariegos v. Office of U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim).

An alien who arrives in or is present in the U.S. may apply for asylum. *See* INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." *See* INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *See Najjar*, 257 F.3d at 1284.

The alien must establish past persecution or a well-founded fear that his political opinion, or other protected ground, will cause harm or suffering that rises

6

to the level of persecution. 8 C.F.R. § 208.13(b)(1),(2); *Najjar*, 257 F.3d at 1287. To establish a well-founded fear, "an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable." *Id.* at 1289. A finding of past persecution creates the presumption of a well-founded fear of persecution and shifts the burden to the government to demonstrate that either conditions have changed in the alien's home country, or the alien could avoid such persecution by relocating in the home country and that relocation is reasonable. 8 C.F.R. § 208.13(b)(i). Otherwise, an applicant must show that he faces a threat of future persecution country-wide. *Arboleda v. U.S. Atty. Gen.* 434 F.3d 1220, 1223 (11th Cir. 2006). In *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247 (11th Cir. 2006), we acknowledged that the 2002 Country Report revealed that "persons in Colombia who are 'fleeing guerillas or police/military harassment or threats in conflictive zones usually are able to find peaceful residence elsewhere in the country.'" *Id.* at 1259. Since 2001, the immigration regulations have codified the country-wide requirement, and have instructed the IJ to consider whether "under all the circumstances it would be reasonable to expect the applicant to [relocate]." 8 CFR § 1208.13(b)(2)(ii).

While we have not specifically defined persecution, we have noted that "'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does

7

not amount to persecution.'" *Sepulveda v. U.S. Att'y Gen.* 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation omitted). "Not all exceptional treatment is persecution." *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir.1998) (persuasive authority stating that "persecution" "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty")).

Further, it is not enough that an alien hold a political opinion, he must show that he was persecuted because of that opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 482, 112 S. Ct. 812, 816, 117 L. Ed. 2d 38 (1992).

With respect to past persecution, the record demonstrates that Morales received multiple threatening phone calls from the Revolutionary Armed Forces of Colombia ("FARC"), and that, on April 20, 2000, three uniformed but unidentified persons came to his farm and fired gun shots after speaking with the farm administrator. First, we have held that menacing phone calls and threats do not rise to the level of persecution. *See Sepulveda*, 401 F.3d at 1231. Second, because it is not clear who the uniformed visitors were, or whether they had any connection to the FARC, Morales's assertion that he was persecuted by the FARC guerillas is not supported by the record.

8

With regard to whether Morales established that he was targeted on account of his political opinion, Morales admitted that several of the phone calls he received from the FARC demanded money and malaria medicine, thus, apparently, the FARC targeted him for his financial status. Furthermore, the record, with respect to the April 20, 2000, incident does not reveal on what basis the three unidentified men visited his farm demanding to speak to him. Even assuming that Morales did show that he was targeted, at least in part, on account of a protected ground, because Morales has failed to establish that he suffered past persecution, the fact that he could establish a protected ground is not sufficient to compel a reversal of the BIA's and IJ's decision.

Furthermore, despite his fear of harm by the FARC, and having had a visa to enter the United States in April 2000, at the time he experienced the most extreme treatment, Morales did not leave Colombia to the United States after the FARC visited his farm in Choco. Rather, Morales left Colombia for the United States over a year later in May 2001, long after the threatening phone calls stopped. Upon arriving in the United States, Morales did not apply for asylum. Furthermore, Morales returned to Colombia despite his fear of persecution, and remained there after he received two more threatening phone calls. Even though Morales testified that since he left Colombia and shortly before the removal hearing, his son and the mother of another son were beaten by attackers who asked

his whereabouts, he did not testify as to the attackers identity, or whether they were connected to the FARC. Even assuming that Morales could demonstrate a well founded fear of future persecution based on a certified statement from the mother of his son that, since March 2002, she received three suspicious and threatening phone calls from a member of the FARC, Morales did not establish country-wide persecution.

Here, we conclude that the BIA and IJ's finding with respect to establishing country-wide persecution is supported by substantial evidence because Morales testified that he never considered living outside of Bogota. Therefore, even if Morales had established a well-founded fear of future persecution, he could reasonably have been expected to avoid future threat to his life or freedom by relocating to another part of the country. *See Ruiz*, 440 F.3d at 1259.

For the above-stated reasons, we conclude that Morales failed to carry his burden of establishing eligibility for asylum. Accordingly, we deny the petition in this respect.

**PETITION DISMISSED IN PART, DENIED IN PART.**

10