[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16766
_____

D.C. Docket No. 2:13-cv-00663-MHT-TFM

JAMES HALL,

Plaintiff-Appellee,

versus

SECRETARY, STATE OF ALABAMA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 29, 2018)

Before WILLIAM PRYOR, JILL PRYOR, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Under Alabama law, independent candidates for political office may obtain

ballot access, meaning the right to have their name listed on the election ballot, by

filing a petition signed by at least "three percent of the qualified electors who cast ballots for the office of Governor in the last general election for the state, county, district, or other political subdivision in which the candidate seeks to qualify." Ala. Code. § 17-9-3(a)(3). In Swanson v. Worley, 490 F.3d 894 (11th Cir. 2007), this Court held that Alabama's 3% signature requirement for ballot access is constitutional as applied during a regular election cycle. Id. at 912.

On December 17, 2013, Alabama held a special election to fill a vacancy in its First United States House of Representatives District. Appellee James Hall ran as an independent candidate in that election. Due to Hall's failure to meet the 3% signature requirement, Hall's name did not appear on the special election ballot. Hall sued Appellant, the Alabama Secretary of State, pursuant to 42 U.S.C. § 1983, claiming that the 3% requirement as applied during the special election violated his First and Fourteenth Amendment rights.[1]

After denying Hall's motion for a preliminary injunction (in large part because Hall had not shown a substantial likelihood of success on the merits and

[1] Plaintiff-below N.C. "Clint" Moser, Jr. also brought First and Fourteenth Amendment claims in the district court. The district court dismissed Moser's claims as moot, and Moser did not appeal. Plaintiffs also initially brought Equal Protection Clause and Fifteenth Amendment claims. The district court granted summary judgment in favor of the Secretary on Plaintiffs' Equal Protection Clause claims and found that Plaintiffs waived their Fifteenth Amendment claims. Neither Hall nor Moser appealed those decisions.

2

because ballots had already been mailed in accordance with the Uniformed and Overseas Citizens Absentee Voting Act), the district court granted summary judgment in favor of Hall, issuing a declaratory judgment that Alabama's 3% signature requirement for ballot access violates the First and Fourteenth Amendments when enforced during any off-season special election for a U.S. House of Representatives seat in Alabama, for which: "(a) the vacancy is announced less than 124 days prior to the petition deadline and (b) the date of the special election is announced less than 57 days prior to the petition deadline." Appellant, the Secretary, brings this appeal. Appellant argues that: (1) the case is moot; and, alternatively, (2) Alabama's 3% signature requirement is constitutional in the specific circumstances challenged by Hall. As discussed below, we conclude that this case is moot. Thus, we do not address the constitutionality of Alabama's 3% signature requirement as applied during the special election circumstances presented here.

## I.

"Mootness is a question of law, which this court reviews de novo." Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1262 (11th Cir. 2006). "The doctrine of mootness derives directly from the [Article III] case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case

3

or controversy.'" Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam) (quoting Adler v. Duval Cty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997)). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Id. at 1336 (quoting Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216–17 (11th Cir. 2000)). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." Id.

There is an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S. Ct. 279, 283, 55 L. Ed. 310 (1911) "[I]n the absence of a class action, the 'capable of repetition, yet evading review' doctrine [i]s limited to the situation where two elements combine[]: (1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again."[2] Weinstein v. Bradford, 423

---

[2] For the reasons discussed below, we reject Hall's argument that the Supreme Court has dispensed with the requirement that the same complaining party will be subject to the same action again.

4

U.S. 147, 149, 96 S. Ct. 347, 349, 46 L. Ed. 2d 350 (1975) (per curiam); Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1343 (11th Cir. 2014) (adopting the same two-prong test). "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." Al Najjar, 273 F.3d at 1336.

"The 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." Storer v. Brown, 415 U.S. 724, 737 n.8, 94 S. Ct. 1274, 1282 n.8, 39 L. Ed. 2d 714 (1974). Regarding the application of the exception to as-applied challenges, the plaintiff need not show that every "legally relevant" characteristic in the case will recur. See Fed. Election Comm'n v. Wis. Right To Life, Inc., 551 U.S. 449, 463, 127 S. Ct. 2652, 2663, 168 L. Ed. 2d 329 (2007). Rather, it is sufficient that there is a reasonable expectation that "materially similar" circumstances will recur. See id. at 463–64, 127 S. Ct. at 2663 (holding that the plaintiff's challenge to a law making it a crime to run ads mentioning political candidates within a certain number of days before an election was not moot based on the plaintiff's assertion that it intended to run "'materially similar' future targeted broadcast ads mentioning a candidate" before future elections (citation omitted)).

5

## II.

To determine whether this case is capable of repetition, we confine our inquiry to whether there is a reasonable expectation that Hall will be faced with meeting the 3% ballot-access requirement during an Alabama special election for a U.S. House seat. The scope of the relief sought by Hall, and the relief granted by the district court, was thus limited. Moreover, meeting the 3% requirement for an office other than a U.S. House seat could require Hall to collect a materially different number of signatures than the number that he was required to collect in 2013. Thus, a special election for an office other than a U.S. House seat would not subject Hall to the same or a materially similar action to the action that he faced in 2013. We must therefore determine whether there is a reasonable expectation that Hall will have an opportunity during his life to run or vote in a special election for a U.S. House seat in Alabama. We conclude that there is not.

Hall resides in Alabama's First House District and there is no indication that he intends to move. Before 2013, the last special election in Alabama's First House District was in 1935. Although it is possible that there will be an unexpected vacancy in Alabama's First House District during Hall's life, reasonable expectation requires more than a theoretical possibility. Similarly remote is the possibility that Hall will run or vote in a special election for another Alabama

6

House seat. The record indicates that, recently, special elections for any U.S. House seat in Alabama have occurred only about every twenty years.[3] Hall contends that he wants to run in any special election for a U.S. House seat in Alabama regardless of his residence. But, as more fully discussed below, the prospect of Hall running to represent a district in which he does not live is far-fetched. And Hall can only vote in the district in which he resides. Given the infrequency and unpredictable nature of special elections for U.S. House seats, it is unreasonable to expect Hall to move to another Alabama district at a time that allows him to run or vote in such an election in that district. See Murphy v. Hunt, 455 U.S. 478, 482, 102 S. Ct. 1181, 1183–84, 7 L. Ed. 2d 353 (1982) (per curiam) ("The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the [capable-of-repetition] test . . . ."); Al Najjar, 273 F.3d at 1336. Thus, this case does not satisfy the second prong of the capable-of-repetition-yet-evading-review exception to mootness. There is no reasonable

---

[3] Alabama has held special elections for U.S. House seats in 1941, 1944, 1947, 1972, 1989, and 2013. Based on the fact that Alabama has held six special elections for U.S. House seats since 1941, the dissent suggests that special elections for U.S. House seats in Alabama have historically occurred approximately every twelve years. Since 1947, however, special elections for U.S. House seats in Alabama have occurred with intervals over twenty years. In any event, the frequency of special elections in Alabama House seats is such that it will likely be a long time before the next one.

expectation that Hall, the same complaining party, will again be subject to the Alabama 3% requirement as an independent candidate or voter in a special election for a U.S. House seat.

### III.

We recognize that some of the Supreme Court's early election law cases suggest that the same complaining party rule may apply in a rather relaxed manner in the context of election cases. See Storer, 415 U.S. at 737 n.8, 94 S. Ct. at 1282 n.8. In Storer, the Supreme Court addressed several challenges to California's election laws as applied during a regular election cycle. Id. at 727, 94 S. Ct. at 1277. For example, California law barred independent candidates from gaining ballot access if the candidate had been affiliated with a political party within the previous twelve months. Id. at 726, 94 S. Ct. at 1277. Two of the challengers, Storer and Frommhagen, sought to run as independent candidates for California's Sixth and Twelfth Congressional Districts in the 1972 election. Id. at 727 n.3, 94 S. Ct. at 1278 n.3. They were barred from obtaining ballot access because both had been registered Democrats until early 1972. Id. at 728, 94 S. Ct. at 1278.

Before reaching the merits of their challenge, the Court found that the case was not moot because "the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future

8

elections." Id. at 737 n.8, 94 S. Ct. at 1282 n.8. The Court did not explicitly

address whether there was a reasonable expectation that Storer, Frommhagen, or

any of their supporters would be subjected to the same action again. The Storer

opinion did not address whether these candidates expressed their intent to change

their affiliation again in the future or their intention to run again as independent

candidates and seek ballot access. Nevertheless, the Supreme Court addressed the

merits of the case, recognizing that "[t]he construction of the statute, an

understanding of its operation, and possible constitutional limits on its application,

will have the effect of simplifying future challenges" to California's election laws.

Id. The Storer opinion also involved two other challengers, Hall and Tyner,

members of the Communist Party, who sought ballot access to run as independent

candidates for President and Vice President of the United States. Id. at 727–28, 94

S. Ct. at 1278. The Supreme Court addressed the merits of their challenge also. Id.

at 738, 94 S. Ct. at 1283.

The instant case, however, is materially different than Storer. Storer

addressed ballot access restrictions during a regular election cycle. Thus, the issue

presented in that case would almost certainly repeat every few years, presenting the

Storer politicians with repeated opportunities to run. In stark contrast, the issue

presented by Hall will not repeat during every election cycle in Alabama. Rather,

9

the record indicates that, with this particular U.S. House seat, the last special election was in 1935, and the record indicates that, recently, a special election for any U.S. House seat in Alabama has occurred only about every twenty years. The issue presented in this case will therefore recur, if at all, with far less frequency than the issue presented in Storer and other cases that involve challenges to election laws as applied during regular election cycles. Given this distinction, the application of the same complaining party rule in ordinary election law cases has limited import here.

## IV.

It is true that the language used by Storer—i.e., that the case was not moot because the "effects [of the challenged burdens] on independent candidacies . . . will persist as the California statutes are applied in future elections," id. at 737 n.8, 94 S. Ct. at 1282 n.8—could be construed to suggest that the Court was dispensing with any requirement that the same complaining party will be subject to the same action again. Relying on Storer, Hall argues that the same complaining party rule does not apply in the context of election cases. For several reasons, we reject Hall's argument; we do not believe Storer should be construed as dispensing with the same complaining party rule.

10

First, Storer is consistent with a relaxed application of the same complaining party rule. The Court did not explicitly address whether the four challengers would again seek to run as independent candidates and run afoul of the restriction that kept them off of the ballot, but it is not unreasonable to expect that politically active persons, like the challengers, would do so in another general election. As indicated below, cases construing the boundaries of the relaxation of the same complaining party rule in election cases do not always require affirmative proof that the same complaining party intends to continue similar participation in political activities and challenge again the restriction at issue; rather, the cases require only that there be a reasonable expectation under all the circumstances that the same complaining party will continue such activities and again be subject to the challenged restriction.

A second reason that we do not believe that Storer dispensed with the same complaining party rule is as follows. Supreme Court cases after Storer have consistently applied the same complaining party rule in evaluating whether a case falls within the capable-of-repetition-yet-evading-review exception to mootness. DeFunis v. Odegaard, 416 U.S. 312, 314, 319–20, 94 S. Ct. 1704, 1705, 1707, 40 L. Ed. 2d 164 (1974) (per curiam) (holding that the plaintiff's challenge to the law school's admission procedure was moot because the plaintiff, who "brought the

11

suit on behalf of himself alone, and not as the representative of any class," was enrolled at the law school and would "complete his law school studies at the end of the term for which he [was] registered regardless of any decision th[e] Court might reach on the merits of th[e] litigation"); Richardson v. Ramirez, 418 U.S. 24, 36, 94 S. Ct. 2655, 2662, 41 L. Ed. 2d 551 (1974) (recognizing in the election law context that "if the case were limited to the named parties alone, it could be persuasively argued that there was no present dispute on the issue of the right to register [to vote] between the three named individual respondents in this Court and the one named petitioner here" but holding that the case was not moot because the "individual named plaintiffs brought their action in the Supreme Court of California on behalf of themselves and all other ex-felons similarly situated"); Sosna v. Iowa, 419 U.S. 393, 399, 95 S. Ct. 553, 557, 42 L. Ed. 2d 532 (1975) (holding that the case was not moot because the plaintiff represented a certified class but opining, "If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal."); Weinstein, 423 U.S. at 149, 96 S. Ct. at 349 (holding that the plaintiff's challenge to North Carolina's parole procedures was moot because the plaintiff had been paroled and stating, "Sosna decided that in the absence of a class action, the

12

'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."); Neb. Press Ass'n v. Stuart, 427 U.S. 539, 547, 96 S. Ct. 2791, 2797, 49 L. Ed. 2d 683 (1976) (holding that the case was not moot because the dispute between the state and the Nebraska Press Association, among others, regarding a restraining order on the press during a criminal trial was capable of repetition); Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 187–88, 99 S. Ct. 983, 992, 59 L. Ed. 2d 230 (1979) (applying the Weinstein two-prong test and determining that the State Board's challenge to the Chicago Board's unilateral settlement regarding a 1977 special mayoral election in Chicago was moot because the Chicago Board's entry into the settlement was not "a policy it had determined to continue," "a consistent pattern of behavior," or "a matter of statutory prescription"); Murphy, 455 U.S. at 482–84, 102 S. Ct. at 1183–84 (quoting the Weinstein two-prong test and holding that the case was moot because there was "no reason to believe that [the plaintiff] Hunt w[ould] once again be in a position to demand bail before trial"); Honig v. Doe, 484 U.S. 305, 319–20, 108 S. Ct. 592, 602, 98 L. Ed. 2d 686 (1988) (holding that the challenge to the school

13

district's rule allowing the unilateral exclusion of disabled children for dangerous or disruptive conduct was not moot as to one of the plaintiffs because there was a reasonable expectation that that plaintiff "would once again be subjected to a unilateral 'change in placement' for conduct growing out of his disabilities"); Meyer v. Grant, 486 U.S. 414, 417 n.2, 108 S. Ct. 1886, 1890 n.2, 100 L. Ed. 2d 425 (1988) (applying the Weinstein two-prong test in the election law context and holding that the case was not moot where the proponents of a ballot initiative continued to advocate for its adoption); Int'l Org. of Masters, Mates & Pilots v. Brown, 498 U.S. 466, 473, 111 S. Ct. 880, 885, 112 L. Ed. 2d 991 (1991) (holding in the context of union elections that the individual plaintiff's challenge to a union election rule was not moot "even though respondent's campaign literature has been distributed and even though he lost the election by a small margin," and noting that "[r]espondent has run for office before and may well do so again"); Norman v. Reed, 502 U.S. 279, 288, 112 S. Ct. 698, 705, 116 L. Ed. 2d 711 (1992) (holding in the election law context that a challenge to the petitioners' ability to appear on the 1990 ballot under the Harold Washington Party name was not moot even though the 1990 election had passed because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints"); Wis. Right To Life, Inc., 551 U.S. at 462–64, 127 S. Ct. at 2662–63

14

(quoting the Weinstein two-prong test in the campaign ad election context and holding that the plaintiff's challenge to a law prohibiting targeted broadcasts within a certain number of days before an election was not moot because the plaintiff intended to run materially similar targeted broadcast ads before future elections); Davis v. Fed. Election Comm'n, 554 U.S. 724, 735–36, 128 S. Ct. 2759, 2769–70, 171 L. Ed. 2d 737 (2008) (quoting the Weinstein two-prong test in the campaign finance election law context and holding that the plaintiff's challenge to certain campaign contribution limits was not moot where the plaintiff made a public statement expressing his intent to self-finance another bid for a House seat).

As the foregoing cases demonstrate, the Supreme Court has indicated repeatedly that the capable-of-repetition-yet-evading-review exception to mootness should be tested by the Weinstein two-pronged test (including the same complaining party rule) in cases generally. And, particularly relevant for the instant case, several Supreme Court cases have applied the same complaining party rule in the election law context, as indicated in the parenthetical notations above. For example, the Court in Meyer v. Grant sets out the two-pronged Weinstein test, holds that both prongs are satisfied, and explains that the plaintiffs (who challenged state law restrictions to ballot access) continued to advocate for the adoption of the state constitutional amendment at issue and thus it was "reasonable

15

to expect that the same controversy will recur between these two parties, yet evade meaningful judicial review." 486 U.S. at 417 n.2, 108 S. Ct. at 1890 n.2. The fact that the Supreme Court has expressly found that the same complaining party rule is satisfied in election law cases counsels against interpreting Storer as dispensing with the rule. See also Arcia, 772 F.3d at 1343 (in the election context, this Court applied the two-pronged Weinstein test, including the same complaining party rule).

Finally, the Supreme Court's other early election cases are consistent with our interpretation of Storer. For example, in Moore v. Ogilvie, 394 U.S. 814, 89 S. Ct. 1493, 23 L. Ed. 2d 1 (1969), independent candidates for the offices of electors of the President and Vice President of the United States challenged an Illinois ballot access signature requirement. Id. at 815, 89 S. Ct. at 1494. The Court held that the case was not moot because the law would continue to control future elections, "as long as Illinois maintains her present system as she has done since 1935." Id. at 816, 89 S. Ct. at 1494. Although the Court did not explicitly address the likelihood that the same independent candidates would seek to run again, there was a reasonable expectation that they would do so, given that they were politically active individuals who would have the opportunity to do so every four years. Also, in Brockington v. Rhodes, 396 U.S. 41, 90 S. Ct. 206, 24 L. Ed. 2d

16

209 (1969) (per curiam), the Court held that the plaintiff's ballot access challenge was moot because the election was over and the plaintiff sought only a limited, extraordinary remedy—"a writ of mandamus to compel the appellees to place his name on the ballot as a candidate for a particular office in a particular election." Id. at 43, 90 S. Ct. at 208. The Court noted that the plaintiff did not allege that he intended to run for office in future elections, attempt to maintain a class action, sue on behalf of himself and independent voters, or seek a declaratory judgment. Id. at 43, 90 S. Ct. at 207–08. The Court's recognition of the first three factors suggests that the Court considered whether the same plaintiff would be subjected to the same action again in this pre-Storer election law case.[4]

---

[4] The final two pre-Storer election law cases on which Hall relies also fail to support his argument that the Supreme Court has dispensed with the same complaining party rule in the election context. These cases, Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972) and Rosario v. Rockefeller, 410 U.S. 752, 93 S. Ct. 1245, 36 L. Ed. 2d 1 (1973), were class actions. Dunn, 405 U.S. at 331, 92 S. Ct. at 997 ("The issue arises in a class action for declaratory and injunctive relief brought by appellee James Blumstein."); Rosario, 410 U.S. at 755 n.4, 93 S. Ct. at 1248 n.4 ("The present consolidated case originated in two complaints, one by the petitioner Rosario and other named plaintiffs, on behalf of a class, and one by the petitioner Eisner."). As noted above, in Sosna, the Supreme Court made clear that the class action context is different than the situation in which an individual plaintiff's claim is moot and not capable of repetition with regards to the individual plaintiff. Relying on Dunn and Rosario, the Sosna Court held that the plaintiff's class action challenge to Iowa's durational residency requirement to obtain a divorce was not moot even though the named plaintiff had satisfied the requirement, obtained a divorce, and was therefore unlikely to be subjected to the same action again. 419 U.S. at 401–02, 95 S. Ct. at 558–59. The Court observed that the class action issue "was present in Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972), and was there implicitly resolved in favor of the representative of the class." Id. at 400, 95 S. Ct. at

17

## V.

Although it is clear that the Supreme Court has not dispensed with the same complaining party rule, several cases, multiple treatises, and several scholars have suggested that the rule is applied in a rather relaxed manner. See 13C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 3533.9 (3d ed. 2008) ("Wright & Miller") ("Although it has not been abandoned, the requirement that the individual plaintiff is likely to be affected by a future recurrence of a mooted dispute has been diluted in some cases."); 15 Moore's Federal Practice § 101.99 (2018) ("[T]he [capable-of-repetition] exception generally applies only if the claim of the very same litigant will evade review. . . . However, this standard has been relaxed in some cases . . . ."); Evan Tsen Lee, Deconstitutionalizing Justiciability: The Example of Mootness, 105 Harv. L. Rev. 603, 623 (1992) (arguing that mootness should be considered a prudential doctrine); Marc Rohr, Fighting for the Rights of Others: The Troubled Law of Thirdparty Standing and Mootness in the Federal Courts, 35 U. Miami L.

---

558; see also United States v. Sanchez-Gomez, No. 17-312, 2018 WL 2186177, at *5 (U.S. May 14, 2018) ("The 'fact that a putative class acquires an independent legal status once it is certified' was . . . 'essential to [the] decision[ ] in Sosna.'" (alteration adopted) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013))).

Rev. 393, 444 (1981) (recognizing that the Supreme Court has applied the same complaining party rule with "leniency" in election cases).

One treatise states, "The requirement that the plaintiff show a prospect of personal future involvement with challenged practices may be relaxed substantially with respect to matters of apparent public interest." Wright & Miller, supra at § 3533.8.3. Another opines that the rule is relaxed in cases "involving elections or ongoing government policies." Moore's Federal Practice, supra at § 101.99. Particularly regarding election cases, "[c]andidates have often been allowed to challenge restrictions on candidacy after completion of the election immediately involved and without any showing of plans to become involved in any future election." Wright & Miller, supra at § 3533.9. Our discussion above of Storer seems to confirm some relaxation. See also Moore, 394 U.S. at 815–16, 89 S. Ct. at 1494 (holding that the independent candidates' challenge to Illinois's ballot access signature requirement was not moot without explicitly addressing the likelihood that the same independent candidates would seek to run again); Brown, 498 U.S. at 473 & n.8, 111 S. Ct. at 885 & n.8 (stating that "[r]espondent has run for office before and may well do so again" but also noting that the respondent was in fact running in another union election).

19

The Sixth Circuit case <u>Lawrence v. Blackwell</u>, 430 F.3d 368 (6th Cir. 2005),

illustrates this relaxed application of the same complaining party rule. <u>Lawrence</u>

involved an independent candidate's challenge to Ohio's restrictions on ballot

access in the context of a regular general election cycle. <u>Id.</u> at 370. The court held

that the case was not moot notwithstanding that the 2004 election at issue had

passed. <u>Id.</u> at 371. Applying the same complaining party rule, the court held that

the controversy was capable of repetition:

> Although Lawrence has not specifically stated that he
> plans to run in a future election, he is certainly capable of
> doing so, and under the circumstances it is reasonable to
> expect that he will do so. Neither is an explicit statement
> from Shilo necessary in order to reasonably expect that in
> a future election she will wish to vote for an independent
> candidate who did not decide to run until after the early
> filing deadline passed. The law at issue is still valid and
> applicable to both Lawrence and any independent
> candidate Shilo might wish to vote for in future election
> years. Therefore, the controversy is capable of repetition.

<u>Id.</u> Thus, the Sixth Circuit has held that there is no requirement for affirmative

proof that the same complaining party intends to continue similar participation in

politics and again challenge the restriction at issue; it is sufficient that there be a

20

reasonable expectation under the circumstances that he will again be subjected to the challenged restriction.[5]

Other courts have interpreted the same complaining party rule in a similarly relaxed manner. See Merle v. United States, 351 F.3d 92, 95 (3d Cir. 2003) (holding that a postal worker's challenge to a provision of the Hatch Act that barred him from running for Congress was not moot even though the election had passed because it was reasonable to expect the plaintiff to wish to run for office again regardless of whether he explicitly stated his intent to do so but also interpreting the plaintiff's statement that he would be subject to the Hatch Act in future elections as an indication that the plaintiff intended to run for office again); Majors v. Abell, 317 F.3d 719, 723 (7th Cir. 2003) (holding that the plaintiff's challenge to a state law regarding political advertising was capable of repetition even though the named plaintiff had not sought to run as a candidate in the next election, stating, "[I]n an election case the court will not keep interrogating the plaintiff to assess the likely trajectory of his political career."); Vote Choice, Inc. v.

---

[5] The Sixth Circuit in Lawrence, either in dicta or an alternative holding, also seemed to dispense with the requirement of a reasonable expectation that the same complaining party be subjected to the same restriction again. Id. at 372. To the extent that the Sixth Circuit so held, we respectfully disagree for the reasons set forth in this opinion. In any event, the Sixth Circuit case is distinguishable from the instant case because it involved a regular election cycle, which would recur frequently.

21

DiStefano, 4 F.3d 26, 37 n.12 (1st Cir. 1993) (finding a reasonable expectation that the plaintiff "w[ould] encounter the same barrier again" where "she ha[d] not renounced possible future candidacies," and noting that "politicians, as a rule, are not easily discouraged in the pursuit of high elective office"); see also Kucinich v. Tex. Democratic Party, 563 F.3d 161, 165 (5th Cir. 2009) (holding that a challenge to a Texas Democratic Party oath requirement was not moot even though the plaintiff's counsel "could not state whether his client ha[d] an intention to run for President in the future and declined to express a belief that [the plaintiff] w[ould] again be subject to the party's oath requirement"); Schaefer v. Townsend, 215 F.3d 1031, 1033 (9th Cir. 2000) (relying on Dunn and holding that the plaintiff's challenge to a residency requirement was not moot even though the candidate refused to disclose whether he intended to run in future elections); McLain v. Meier, 637 F.2d 1159, 1162 n.5 (8th Cir. 1980) (holding that the plaintiff's challenge to state ballot access and formatting statutes was not moot without requiring proof that the plaintiff intended to seek ballot access in future elections).[6]

---

[6] To the extent that the Fifth Circuit in Kucinich, the Ninth Circuit in Schaefer, or the Eighth Circuit in McLain suggests that the same complaining party rule does not apply at all, we respectfully disagree, as discussed above. Cf. Kucinich, 563 F.3d at 164–65 (observing Justice Scalia's argument "that the Court's treatment of election law cases differs from its traditional mootness jurisprudence by dispensing with the same-party requirement" (citing Honig, 484 U.S.

22

We need not definitively decide in this case the outer boundaries of the

relaxation with respect to the application of the same complaining party rule. We

are confident that the instant case does not satisfy the same complaining party rule,

however relaxed the rule may be. In light of the history of the infrequent

occurrences of special elections in Alabama for U.S. House seats, we conclude that

it is highly unlikely that Hall will have an opportunity during his life to seek to run

or vote in a special election for a U.S. House seat in Alabama.[7] As noted above, it

is highly unlikely that there will be another special election in Hall's own First

_____

at 335–36, 108 S. Ct. at 611 (Scalia, J., dissenting)); Schaefer, 215 F.3d at 1033 & n.1 (finding that the plaintiff's challenge to the residency requirement was not moot even though the plaintiff had satisfied the requirement and the election had already been held); McLain, 637 F.2d at 1162 n.5 ("Regardless of [the plaintiff]'s candidacy in any future election, election law controversies tend not to become moot."). Moreover, like the Sixth Circuit Lawrence case, Kucinich and McLain involved challenges to election laws as applied during regular election cycles. And although Schaefer involved a special election, the opinion suggests that the challenged residency requirement would apply with equal or greater force during regular election cycles. 215 F.3d at 1034 n.2. Thus, the issues presented in those cases would likely recur frequently, making those cases materially different than the instant case.

[7] By focusing so intensely on Hall's asserted intent to run in future special elections for U.S. House seats in Alabama, the dissent ignores a critical issue in this case—i.e., whether Hall will have an opportunity to run in such an election. Regardless of Hall's intent, if Hall is not likely to have the opportunity to run in a future special election for a U.S. House seat in Alabama, there can be no reasonable expectation that he will do so.

We recognize that courts "do not always require affirmative proof that the same complaining party intends to continue similar participation in political activities" in order to find that the same complaining party rule is satisfied. See supra Part IV. However, the law is well established that courts do require that there be "a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein, 423 U.S. at 149, 96 S. Ct. at 349. For all of the reasons discussed in this opinion, we cannot conclude that there is such a reasonable expectation in this case.

23

U.S. House District during his life. And we consider the prospect of Hall's running

to represent a district in which he does not reside a mere theoretical possibility.

Even if Hall were willing to move to another district upon the announcement of a

mid-term U.S. House vacancy—and there is no suggestion that he is—the

unpredictable nature of a mid-term U.S. House vacancy would mean that Hall's

move to the new district would be shortly before the election. Thus, Hall would

probably be considered a carpetbagger if he attempted to run in the special

election, further reducing the likelihood of his doing so.[8] Similarly unlikely is the

prospect of Hall uprooting his life and quickly moving to a new U.S. House district

in order to register and vote in a special election in that district. We therefore

conclude that this case is not capable of repetition with regards to Hall under any

reasonable application of the same complaining party rule.[9]

---

[8] The dissent's focus on our carpetbagger comment is misplaced. The fact that Hall would be unlikely to prevail if running in a foreign House district is just one more factor indicating that there is no reasonable likelihood of such a race.

[9] The dissent mistakenly suggests that we make a factual finding that Hall does not really intend to run in future special elections for U.S. House seats in Alabama. To the contrary, we hold only, as established law provides, that there must be a "reasonable expectation" that he will run again and be subjected to the same or similar restrictions. Under the circumstances presented here, we cannot conclude that Hall's intent is reasonable. Running in a special election for a U.S. House seat outside of Hall's district would require Hall to either abruptly move or regularly travel to another part of Alabama to campaign. Such practical difficulties along with the fact that such an election may not occur for twenty years make the prospect of Hall running in such an election remote regardless of Hall's present intent.

24

We recognize that this case presents a conflict between strong and legitimate concerns. On the one hand, the district court's opinion seems to us to be a resolution of only the rights of future independent candidates seeking ballot access in future special elections. We can perceive of no real interest on the part of Hall because there is no remedy available to him other than the satisfaction of having this Court tell him that he should have been allowed access to the ballot. See Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, 868 F.3d 1248, 1268 (11th Cir. 2017) (en banc) (recognizing that "absent an accompanying practical effect on the legal rights or responsibilities of the parties before us, we are without jurisdiction to give" litigants "purely psychic satisfaction" through "judicial validation"), cert. denied sub nom., No. 17-869, 2018 WL 1460786 (U.S. Mar. 26, 2018). Any opinion by us on the merits of this case would be nothing more than an advisory opinion. Wholly aside from our constitutional constraint to entertain only real cases or controversies, advisory opinions are always unwise. It is hard for a party to devote the appropriate effort to prosecute a case that can make no real

---

In the dissent's view, the constitutional issue of mootness depends entirely on a plaintiff's mere assertion of intent to run regardless of how unreasonable that may be. In our judgment, the constitutional authority of a court to decide a case could not depend on so slender a read, one so readily subject to manipulation.

25

difference to the party; the parties' advocacy necessarily suffers, and the Court is left without necessary guidance.[10]

On the other hand, courts are understandably loathe to permit a situation in which a governmental restriction is effectively immune from judicial review and correction, because the duration of the restriction is too short to be fully litigated before it expires. Fortunately, the instant case does not present a situation in which a challenge to the Alabama restriction will always evade review. Although "the 'mere presence of . . . allegations' that might . . . benefit other similarly situated individuals cannot 'save [a litigant's] suit from mootness once [his] individual claims' have dissipated," Sanchez-Gomez, 2018 WL 2186177, at *6 (quoting Genesis Healthcare Corp., 569 U.S. at 73, 133 S. Ct. at 1529), a litigant whose interest extends beyond his or her own concern about access to the ballot for a particular special election can file a class action suit that comports with the

---

[10] To the extent that the dissent suggests that a plaintiff's past candidacy alone is sufficient – i.e., sufficient to satisfy the requirement that there be a reasonable expectation that the plaintiff will run again and be subjected to the same or similar restrictions – even if it is extremely unlikely that the plaintiff will have the opportunity to run and be subjected to the same or similar restrictions, the dissent is in effect dispensing with any requirement that the same complaining party will be subject to the same action again. In Part IV of our opinion, we consider and reject this proposition. We believe that our position—rather than the dissent's position—is more in harmony with the cases in the Supreme Court and the other circuits.

26

strictures of Federal Rule of Civil Procedure 23, and thus avoid mootness. Id. at *5–6. The Supreme Court in Sosna has held that, when a suit is brought as a class action and the district court has certified the class and found that the named plaintiff would fairly and adequately protect the interests of the class, "[t]he controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot" and is not capable of repetition with regards to the named plaintiff. 419 U.S. at 402, 95 S. Ct. at 559. We believe that such a posture is much preferable, as compared to the advisory opinion that Hall seeks, because the class certification findings provide assurance that the class of future candidates and/or future voters would be adequately represented by vigorous advocacy.[11] See also Sanchez-Gomez, 2018 WL 2186177, at *6 ("[C]ourts may not 'recognize . . . a common-law kind of class action' or 'create de facto class actions at will.'"

---

[11] The dissent expresses concern that a class action challenging Alabama's ballot access restrictions during a special election would also be moot and not capable of repetition with regards to any member of the class once the election at issue had passed. We disagree. Such a class action could likely include independent candidates and voters in all U.S. House districts in Alabama. There is a greater likelihood of a future special election when all U.S. House seats are in play; thus, the class would have a much stronger argument than Hall that the issue was capable of repetition with regards to at least some members of the class.

27

(quoting <u>Taylor v. Sturgell</u>, 553 U.S. 880, 901, 128 S. Ct. 2161, 2176, 171 L. Ed. 2d 155 (2013))).

For the foregoing reasons, we conclude that this case is MOOT. Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss the case as MOOT.

VACATED and REMANDED with instructions.

JILL PRYOR, Circuit Judge, dissenting:

In 2013, Congressman Jo Bonner, who represented Alabama's First Congressional District, announced that he would be retiring, and a special election was called to elect the district's next representative. James Hall, a 39-year-old United States Marine Corps veteran, sought to run as an independent candidate in the special election.

To be listed on the ballot, candidates had to obtain signatures from 5,938 registered voters in the district—a number equivalent to 3% of the votes cast in the district in the last gubernatorial election. *See* Ala. Code § 17-9-3(a)(3). There were only about four months between Congressman Bonner's announcement and the deadline for candidates to submit the required signatures. Within this relatively brief period, Hall decided to run, created a plan for collecting signatures, and began gathering them. Hall's time frame was even more compressed because the Secretary of State had no official form available for candidates to use to collect signatures for the special election, which meant that Hall could not begin gathering signatures until the Secretary of State approved his form. After receiving the Secretary of State's approval, Hall had only 106 days remaining to obtain the signatures. He sought signatures at community events, canvassed his network of friends and colleagues, and visited over 5,000 homes, but he was unable to collect

the required number of signatures in time.  As a result, Hall's name did not appear on the ballot for the 2013 special election.

In this appeal, Hall challenges the State of Alabama's application of its ballot access requirement to the 2013 special election.  We previously held that Alabama's ballot access requirement was constitutional when applied to a regularly scheduled election, *Swanson v. Worley*, 490 F.3d 894, 896-97, 903 (11th Cir. 2007), but this appeal presents a different question:  whether the ballot access requirement is constitutional when applied to a special election for a United States House of Representatives seat, where a candidate faces a considerably more compressed time frame for gathering signatures.  Unfortunately, the majority avoids answering this important constitutional question by concluding— incorrectly, in my view—that Hall's claim is moot.

The Constitution limits our jurisdiction to actual cases or controversies.  *See* U.S. Const. art. III, § 2, cl. 1.  We lack jurisdiction to hear a moot case—one that "no longer presents a live controversy with respect to which the court can give meaningful relief." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (internal quotation marks omitted).  But even if the controversy at hand is no longer live, we may retain jurisdiction under an exception to the mootness doctrine that addresses circumstances in which the issue is capable of repetition yet tends to

30

evade judicial review.  *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (internal quotation marks omitted).  This exception applies when (1) "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Id.* (alterations adopted) (internal quotation marks omitted).  No one disagrees that the first prong of this test is satisfied here.

The majority holds that the second prong of the test, the "same complaining party rule," is not satisfied here.  Maj. Op. at 22.  The majority concedes that in the context of election challenges the same complaining party rule applies in a "relaxed" manner.  *Id.*  Despite failing to identify what kind of proof is required to satisfy the same complaining party rule in this context, the majority holds that Hall's proof was insufficient.  *See id.* ("We are confident that the instant case does not satisfy the same complaining party rule, however relaxed the rule may be.").  And it reaches this conclusion even though Hall testified that he plans to run as an independent candidate in a future election.

I disagree with the majority's application of the same complaining party rule in this case.  Looking to Supreme Court precedent, I would conclude that in the unique context of an election-related challenge, we can infer from Hall's past

31

candidacy alone that there is a reasonable expectation he will run as an independent candidate in a future special election and be subject to the same ballot access requirement. But even assuming that to satisfy the same complaining party rule a candidate is required to submit some additional evidence of his intent to run again, I believe Hall satisfied this burden with his testimony that he intends to run as an independent candidate in future elections, which would include special elections. I would hold that the case is not moot, address the merits, and affirm based on the district court's well-reasoned opinion. I respectfully dissent.

## I.    In Election Challenges, Courts Can Infer That Candidates Will Run in Future Special Elections from the Fact That They Ran in a Previous Special Election.

To satisfy the same complaining party rule, a plaintiff must show that "there is a reasonable expectation" that she "will be subject to the same action again." *Kingdomware Techs*, 136 S. Ct. at 1976 (alterations adopted) (internal quotation marks omitted). In general, this means that a plaintiff must come forward with evidence of her future plans. But, as the majority concedes, the Supreme Court has applied this rule less strictly in the context of election-related challenges. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974). In this unique context, we can infer a reasonable expectation that a candidate will run in a future election and be

32

subject to the same challenged ballot access restriction from the fact that she previously ran as a candidate.

The Supreme Court implicitly drew such an inference in *Storer*. There, several candidates challenged a California law that barred an individual who had recently been affiliated with a political party from being listed as an independent candidate on an election ballot. *Id.* at 726-27. By the time the case made its way to the Supreme Court, the election for which the candidates sought ballot access had passed. *Id.* at 737 n.8. In addition, for some of the plaintiffs, sufficient time had passed since they disaffiliated from their former political party that they now were exempt from the challenged law. *See id.* at 726-28. The Supreme Court nevertheless held that the case was not moot because "the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections." *Id.* at 737 n.8.

The Court held that the case was not moot without conducting any inquiry into any candidate's intent to run in a future election or the likelihood that the candidate would be subject to the disaffiliation requirement in a future election. *See id.* This was so even though at least some of the candidates would be subject to the disaffiliation restriction in the future only if they chose to rejoin a political party and then decided to run as an independent candidate before sufficient time

33

had passed since their disaffiliation from the political party. *See id.* The absence of any discussion about the actual likelihood of the candidates being subject to the disaffiliation requirement in the future means the Court must have treated the fact that the candidates had run in a past election as sufficient to establish a reasonable likelihood that they would be subject to the challenged restriction again in the future. *See id.*; *see also Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (concluding— without requiring evidence that any plaintiff would run in a future election and despite a dissent arguing that the case was moot without such evidence—that a challenge to a ballot access requirement for independent candidates was not moot because even though the relevant "election is over, the burden . . . remains and controls future elections").

Subsequent Supreme Court cases confirm that in the specific context of a challenge to a ballot access requirement, courts can infer from the fact that a party previously ran as a candidate a reasonable expectation that he will run in a future election and again be subject to the challenged requirement. In *Norman v. Reed*, a group of voters who were organizing a new political party challenged an Illinois law requiring them to collect a certain number of signatures for the party to be listed on the election ballot. 502 U.S. 279, 283-84 (1992). By the time the case reached the Supreme Court, the election was over. *Id.* at 287. Yet the Supreme

34

Court held that the case was not moot because "[t]here would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if [the Court] should fail to resolve the constitutional issues" that arose during the first election. *Id.* at 288. Again, the Court reached this conclusion without requiring evidence that the voters would try to get the party on the ballot in future elections. Instead, it appears that the Court inferred from the voters' past attempt to seek ballot access that they would do so in the future. *See id.*; *see also Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991) (holding that union officer candidate's challenge to union's election rule was not moot because the candidate "has run for office before and may well do so again," without addressing whether there was any evidence of the candidate's actual intent to run again).

I acknowledge that in other election-related cases the Supreme Court has held that the same complaining party rule was satisfied where the plaintiffs presented evidence that they would engage in conduct that would make them subject to the challenged restriction in a future election. *See Davis v. FEC*, 554 U.S. 724, 735-36 (2008); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463-64 (2007); *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988). The Supreme Court held in these cases that evidence of the candidate's intent was *sufficient* to satisfy the same

35

complaining party rule, but it has never held that such evidence was *necessary* to satisfy the rule.  Nor did the Supreme Court cast any doubt in these cases about its decisions in *Storer*, *Reed*, or other cases in which it required no evidence of the plaintiff's intent to run in a future election.

The majority contends that the Supreme Court's decision in *Brockington v. Rhodes*, 396 U.S. 41 (1969) (per curiam), illustrates that a more searching inquiry into a plaintiff's intent to run in a future election is required.  But *Brockington* does not control here.  In that case, a candidate challenged an Ohio ballot access law requiring independent candidates to gather signatures from 7% of the qualified voters in the district.  *Id.* at 41-42.  The candidate obtained signatures amounting to a little over 1% and then petitioned in Ohio state court for a writ of mandamus commanding the election board to certify his nominating petition as sufficient and "to do all things necessary to place [his] name upon the ballot."  *Id.* at 42.  He sought no declaratory relief.  *Id.* at 42.  By the time the appeal reached the Supreme Court, the election was over.  The Court concluded that the case was moot "in view of the limited nature of the relief sought" because with the election over it was "now impossible to grant the [candidate] the limited, extraordinary relief he sought in the Ohio courts."  *Id.* at 43-44.  Because the Supreme Court's mootness decision in *Brockington* was driven by the candidate's decision to seek

36

only mandamus relief, the Court had no occasion to address what evidence would be sufficient for candidates to satisfy the same complaining party rule when they seek a declaratory judgment that a ballot access requirement is unconstitutional. *See id.*

The majority also relies on the Supreme Court's decision in *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 175-76 (1979), to support its assertion that to satisfy the same complaining party rule candidates must provide direct evidence of their intent regarding future elections. But that case does not advance the majority's position. After Chicago's mayor died in office, several new political parties and an independent candidate sought to be included on the ballot for the special mayoral election. *Id.* at 177-78. Together they brought a lawsuit against the Chicago Board of Elections and the State Board of Elections challenging a state law requiring independent candidates and new political parties to gather more than 35,000 signatures before they could be included on the mayoral ballot. *Id.* Before the election occurred, the district court permanently enjoined enforcement of the state law. The Chicago Board of Elections and the plaintiffs then reached a settlement agreement, which the district court incorporated into an order, that reduced the required number of signatures for new political parties and independent candidates. *Id.* at 180. The State Board of

37

Elections filed a motion to vacate the district court's order, arguing that the Chicago Board lacked the authority to settle the dispute without its permission. *Id.* The district court denied the motion. *Id.* The State Board then appealed the district court's orders permanently enjoining enforcement of the ballot access requirement and refusing to vacate the order incorporating the settlement agreement. *Id.*

The Supreme Court affirmed the district court's injunction, holding that the ballot access requirement was unconstitutional. *Id.* at 187. Separately, the Court held that the State Board's challenge to the Chicago Board's settlement authority was moot. *Id.* at 187-88. The capable-of-repetition-yet-evading-review exception to the mootness doctrine did not apply, the Court held, because there was no "reasonable expectation" that the Chicago Board would engage in the challenged conduct—settling litigation without the approval of the State Board—in the future. *Id.* The mootness analysis in *Illinois State Board of Elections* addressed only whether the Chicago Board was likely to attempt to resolve future litigation without agreement from the State Board, not whether future candidates would be subject to the ballot access restriction. I fail to see how the case tells us anything about the application of the same complaining party requirement here.

38

By requiring evidence of intent to run in a future election from a plaintiff in Hall's position, the majority creates a circuit split. Seven other circuits—like the Supreme Court in *Storer*—have found candidate challenges not moot, despite the election at issue having taken place, without requiring any evidence about the candidate's intent to run in future elections. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 165 (5th Cir. 2009) (holding that a candidate's challenge to a political party's oath requirement was not moot even though his counsel "could not state whether his client ha[d] an intention to run . . . in the future and declined to express a belief that [plaintiff] w[ould] again be subject to the party's oath requirement"); *Lawrence v. Blackwell*, 430 F.3d 368, 371-72 (6th Cir. 2005) (concluding that a challenge to a ballot access requirement was capable of repetition yet evading review even though the plaintiff had "not specifically stated that he plan[ned] to run in a future election"); *Merle v. United States*, 351 F.3d 92, 94-95 (3d Cir. 2003) (concluding that there was a reasonable expectation that a postal worker, who had sought to run for Congress but was barred by federal law from running for partisan political office, would be subject to the challenged law again even though he failed to allege that he intended to run in a future election); *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000) (concluding that case was not moot "without examining the future political intentions of the

39

challenger[]"); *Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 37 n.12 (1st Cir. 1993)

(holding that controversy was not moot because the candidate had "not renounced

possible future candidacies, and politicians, as a rule, are not easily discouraged in

the pursuit of high elective office"); *McLain v. Meier*, 637 F.2d 1159, 1162 n.5

(8th Cir. 1980) ("Regardless of McLain's candidacy in any future election, election

law controversies tend not to become moot"). The decisions of our sister circuits

uniformly reflect that "in an election case the court will not keep interrogating the

plaintiff to assess the likely trajectory of his political career." *Majors v. Abell*,

317 F.3d 719, 723 (7th Cir. 2003). No circuit besides ours has taken a contrary

position.

The majority tries to distinguish *Storer* and the decisions from every other

circuit on the ground that these cases involved challenges to election laws or

regulations in the context of regularly scheduled elections, but this case involves a

challenge to a special election. The majority argues that because special elections

occur less frequently, we cannot look to cases applying the same complaining party

rule to regularly scheduled elections, which will reoccur with predictable

regularity. But the majority cites no authority to support its position. In the

absence of any indication from the Supreme Court or even persuasive authority

from another circuit to support it, I would not create a different standard for special

40

elections.  I would instead follow the Supreme Court's analysis and the similar

path taken by every other circuit.  I would conclude that the same complaining

party rule is satisfied in this case because there is a reasonable expectation that

Hall will be subject to Alabama's ballot access requirement in a future special

election based on the fact that he ran as an independent candidate in a previous

special election.

**II.    Even if Candidates Must Prove Their Intent to Run in a Future Election to Satisfy the Same Complaining Party Rule, Hall Has Carried This Burden.**

Even assuming the majority is correct—that to satisfy the same complaining

party rule in the context of a special election candidates must submit some

evidence of their intent to run for office, which will subject them to the challenged

requirement in the future—Hall has met this burden.  The majority concludes there

is only a "theoretical possibility" that Hall would be subject to the ballot access

requirement in a future special election.  Maj. Op. at 22.  I disagree.

The majority so concludes because special elections for U.S. House of

Representatives seats historically have occurred too infrequently in Hall's home

district to say that there is a reasonable expectation that one will occur again during

his lifetime.  But even granting the majority that there is no reasonable expectation

that a special election will occur in Hall's own district during his lifetime, we must

41

consider whether a reasonable expectation exists that he will run in a future special election for a House seat anywhere in Alabama.  As a resident of Alabama, Hall is eligible to represent any district in the State; there is no legal bar to his running for a House seat in a district other than his home district.  *See* U.S. Const. art. I, § 2, cl. 2.  Hall's evidence is sufficient to establish a reasonable expectation that he will run for a House seat in a future Alabama special election (whether it is held in his home district or another district) and thus be subject to the same ballot access requirement.

There is no dispute that we can reasonably expect Alabama to hold a special election for an open seat in the U.S. House of Representatives in the future.  There will be special elections when members of the House resign for various reasons: to accept other appointments or positions (like Alabama Congressman Jo Bonner or Georgia Congressman Tom Price), due to the fallout from public scandal (like Ohio Congressman John Conyers or Texas Congressman Blake Farenthold), or for personal reasons (like Pennsylvania Congressman Charlie Dent).  Seats unfortunately will become vacant when representatives die while in office (like Mississippi Congressman Alan Nunnelee).  Although we do not know when the next such special election will occur in Alabama, we know that another vacancy

*will* occur and need to be filled through a special election.[1]  Since 1941, the State

of Alabama has held six special elections for House seats, meaning special

elections historically have occurred on average once every 12 years.  Given this

frequency and the fact that Hall was only 39 years old during the last special

election, we can reasonably expect a future special election for an Alabama House

seat to occur in Hall's lifetime.  The majority accepts the validity of this type of

analysis.  *See* Maj. Op. at 6-7 (looking to historical evidence about the frequency in

Alabama of special elections for the House of Representatives to assess whether

there is a reasonable expectation of a future special election occurring in Hall's

lifetime).

The next question is whether, for purposes of applying the same

complaining party rule, it is reasonably likely that Hall will run as an independent

candidate in such an election.  Despite the fact that the Constitution permits Hall to

represent any House district in Alabama, *see* U.S. Const. art. I, § 2, cl. 2, the

majority concludes that Hall would not run for a seat outside his home district

because he would be viewed as a "carpetbagger" and thus would be unlikely to

---

[1] I note that even in cases outside the election context, the Supreme Court has recognized that to satisfy the same complaining party rule a plaintiff is not required to "establish[] with mathematical precision the likelihood" that he will be subject to the same challenged government action. *Honig v. Doe*, 484 U.S. 305, 320 n.6 (1988).

43

win.  Maj. Op. at 23.  But the majority offers no authority supporting its assumption that a candidate who lives outside a district cannot win an election there.  I cannot agree with the majority's unsupported speculation.[2]

But the probability of a candidate winning an election for a seat outside her home district is really beside the point.  As the majority acknowledges, Hall testified that he "wants to run in any special election for a U.S. House seat in Alabama regardless of his residence" in another district.  *Id.* at 7.  It is not our place to reject this direct evidence, essentially making a finding of fact that he would not do so.  *See Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) ("Factfinding is the basic responsibility of district courts, rather than appellate courts. . . ." (alteration adopted) (internal quotation marks omitted)); *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1293 (11th Cir. 2010) ("[A]s everyone knows, appellate courts may not make fact findings.").

---

[2] Indeed, an internet search for members of Congress who live outside the districts they represent calls into question the majority's assumption that candidates for House seats outside the district where they reside cannot win elections.  The results of such a search include reports showing that in June 2017 at least 20 members of Congress were registered to vote (meaning their official residences were located) outside the districts they were elected to represent. I acknowledge the possibility that some of these representatives moved outside their districts after being elected.  But even accepting this possibility, the fact that representatives are willing to live outside the districts they were elected to represent suggests that there no significant stigma attached to it.

Furthermore, the majority simply assumes that a candidate will run in an election only if she can win. The majority's supposition ignores that independent and third party candidates may choose to run in elections even though they have no realistic chance of winning. As the Supreme Court has explained, these candidates may run not because they believe that they can win the election, but rather to use the "election campaign [as] a means of disseminating ideas" outside those presented by the two dominant political parties. *Ill. State Bd. of Elections*, 440 U.S. at 186. Hall may run as an independent candidate in a future special election to try to introduce new political ideas and help frame the issues; I cannot agree with the majority that Hall is unlikely to run in an election unless he can win.

By requiring Hall to show that he has a chance not only to run in a future election, but also to win it, the majority adds an element to the same complaining party inquiry that no other court has adopted. In every election-related Supreme Court case discussing the evidence that did or did not satisfy the same complaining party rule, the Court has held that the plaintiffs satisfied the rule when they introduced a statement of intent to participate in a future election. *See Davis*, 554 U.S. at 736 (holding that there was a reasonable expectation that a congressional candidate would be subject to a federal campaign finance law in the future when he "made a public statement expressing his intent" to run for the seat

45

in the future); *see also Wis. Right to Life, Inc.*, 551 U.S. at 463 (concluding that there was a reasonable expectation that an ideological organization would again be subject to a federal law that restricted the content of its political advertisements in the period shortly before primary and general federal elections because the organization "credibly claimed that it planned on running materially similar future targeted broadcast ads . . . within the blackout period"); *Meyer*, 486 U.S. at 417 n.2 (holding, without considering the likelihood that voters would actually approve the initiative, that it was reasonable to expect that proponents of a ballot initiative would be subject to a state law that prohibited paying petition circulators when, despite the initiative's failure, the proponents "continue[d] to advocate its adoption and plan future attempts to obtain the signatures necessary to place the issue on the ballot"). Not one of these cases required—or even hinted—that the plaintiffs had to establish the likelihood that they would win (or the position they supported would prevail) in a future election to satisfy the same complaining party requirement. I cannot agree with the majority's decision, which effectively adds this additional requirement to the same complaining party rule, to go well beyond Supreme Court precedent.

I am concerned that by imposing more stringent requirements on candidates seeking to challenge ballot access laws, the majority's decision will effectively

46

close the courthouse doors to future independent and third party candidates and

voters.  As an example, when the next special election for a House seat in Alabama

is held, to gain access to the ballot independent and third party candidates again

will have to satisfy an onerous signature requirement in a significantly compressed

time frame.  If Hall—or any other candidate or voter in that future special

election—brings a lawsuit raising a constitutional challenge to the signature

requirement, due to the nature of such vacancies there will be very little time to

litigate the challenge before the election passes and the case becomes moot.  The

plaintiff will be unable to rely on the capable-of-repetition-yet-evading-review

exception because, using the majority's logic, there will never be a reasonable

expectation of the candidate running in another special election in his home district

(because such an election is unlikely to occur again during the plaintiff's lifetime)

or in a special election in another district (because the plaintiff will be unlikely to

win).[3]

    The majority acknowledges that "courts are understandably loathe to permit

a situation in which a governmental restriction is effectively immune from judicial

---

[3] It seems to me that a candidate who was unable to gather the number of signatures required to appear on the ballot would never be able to show that he was likely to win a future election.  The effect of the majority's decision, then, is to insulate ballot access laws from judicial review.

47

review and correction, because the duration of the restriction is too short to be fully litigated before it expires." Maj. Op. at 25. I agree. The majority suggests, in *dicta*, that its reasoning will not create such a situation because in a future special election a candidate or voter may challenge Alabama's ballot access requirements in a class action. *Id.* at 25-26. I am far less comfortable that a class action would provide a viable option. Under the majority's logic, a future class action challenging the ballot access restriction brought during the next special election would, like Hall's action here, become moot after the special election occurs. The majority's reasons for concluding there is no reasonable expectation that a special election would occur again in Hall's district during his lifetime likewise would indicate that there is no reasonable expectation that a special election would occur again in any class member's district during her lifetime. The majority suggests that the class could consist of independent voters and candidates in *all* districts in Alabama, but it fails to explain how the claims of class members in other districts where no special election was pending would be justiciable.[4]

---

[4] By pointing to a class action as a suitable alternative, the majority implicitly concedes that a special election can reasonably be expected to occur in at least one House district in Alabama during some class member's lifetime. This argument seems to me to be contrary to the majority's contention that it is "extremely unlikely" that Hall would have the opportunity to run in another special election for a House seat in the same district during his lifetime. Maj. Op. at 24 n.10.

48

By making Alabama's ballot access requirements, as applied in the context of special elections, effectively immune from judicial review and correction, the majority's decision closes the courthouse doors to independent and third party candidates and voters. These citizens are left with no meaningful recourse in the courts to challenge these restrictions, even when the restrictions impose substantial burdens on First Amendment and Fourteenth Amendment rights to vote and to associate for political purposes. I cannot agree with the majority that we should depart from Supreme Court precedent and the decisions of all the other circuits to address this issue by holding that ballot access restrictions curtailing these rights— which "rank among our most precious freedoms"—are effectively unreviewable. *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

\* \* \*

I would hold that the case is not moot under the capable-of-repetition-yet-evading-review exception. There is a reasonable expectation that Hall will be subject to Alabama's ballot access signature requirement in a future special election. I would draw this conclusion based solely on the fact that Hall ran as an independent in the special election at issue here. Alternatively, even if I were to accept the majority's position that Hall was required to produce some evidence showing his intention to run in a future election, I would conclude that he met his

49

burden given his testimony that he plans to run in future elections for any open House seat in the State of Alabama.

Because I would hold that the case is not moot, I would address on the merits Hall's claim that Alabama's ballot access requirement is unconstitutional as applied to the special election here. States certainly have "important and compelling interests in regulating the election process and in having ballot access requirements." *Swanson*, 490 F.3d at 902 (internal quotation marks omitted). But Alabama's ballot access restriction "implicate[s] the constitutional rights of voters, especially those with preferences outside the existing parties, to associate and cast their votes effectively." *Id.* Weighing these interests, I agree with the district court that Alabama's ballot access requirement is unconstitutional as applied in the context of a special election for the House of Representatives when there were only about four months between the announcement of the vacancy and the deadline for an independent or third party candidate to submit signatures to appear on the ballot, and the candidate was further limited to a 106-day period to collect signatures. I would affirm the district court's district court's judgment. Respectfully, I dissent.

50