[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13027

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TIMOTHY TALA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00347-TWT-LTW-1

_____

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Timothy Tala appeals his conviction and sentence for sexual exploitation of a minor to produce child pornography.  Tala argues that there was insufficient evidence to support the conviction because the contents of the video were not sexually explicit in nature.  Tala also argues that the District Court for the Northern District of Georgia erred by failing to impose his federal sentence to run concurrently with his anticipated sentence in a pending state court case in Massachusetts.  The Government moves to dismiss Tala's sentencing challenge as moot because the state court in Massachusetts provided the relief that Tala now seeks on appeal by ordering his state sentence arising out of similar conduct to run concurrently with his federal sentence.  We hold that there was sufficient evidence to support Tala's conviction and affirm his conviction.  His sentencing challenge is dismissed as moot.

**I.**

On February 11, 2020, a federal grand jury in the Northern District of Georgia issued a superseding indictment against Timothy Tala, charging him with one count of sexual exploitation of a minor to produce child pornography, in violation of 18 U.S.C. § 2251(a), (e).  Tala pleaded not guilty and proceeded to a jury trial.

At the trial, the Government presented the following evidence.  Tala's former girlfriend, Chayla Onuegbu, testified that she met Tala in Atlanta in 2014.  At that time, Tala was in a relationship

with another woman, Engrid, who had two daughters—"A.S." and "B.S.," who were around 13 or 14 years old. At some point, Engrid and Tala moved to Massachusetts, but before that, Onuegbu and Tala's relationship became romantic. Tala asked Onuegbu to move to Massachusetts, and in September 2016 she did so, moving in with Tala. Onuegbu testified that in February 2017, she found a video on Tala's laptop of Tala bathing one of Engrid's daughters—who was about 13 or 14 years old—and that Tala put his finger into the girl's vagina.

The Government admitted the video into evidence as Exhibit 1 and played roughly one minute of it during the trial. The video first showed Tala setting up the recording device, and then showed one of Engrid's daughters, A.S., naked in the shower. Onuegbu asked a school administrator to call the police. The Weymouth Police Department responded and Onuegbu gave officers her statement. Onuegbu further testified that the video was filmed at Tala's apartment in Atlanta, which she knew because she had been in that bathroom before. According to Onuegbu, throughout her relationship with Tala, they engaged in sex acts in the bathroom because "[t]hat was his form of intimacy, showering with music." Tala would bathe Onuegbu as part of their sex life. Onuegbu testified further that Tala had strategically placed the camera. She testified that Tala took his middle finger and inserted it into the child's vagina and then held up his finger and said, "You see that this has cream on it." A.S. was crying as this occurred. Onuegbu waited a few weeks to report what she saw so that she could ensure that both she and A.S. were safe.

4                    Opinion of the Court                    22-13027

A.S. also testified.  According to A.S., Tala put her through sexual abuse, rape, and molestation.  The abuse started when she was in the third grade, when Tala put his fingers in her vagina and told her it was because she did not clean it very well.  The first time A.S. saw Tala's penis was in the fifth grade.  He sometimes put his penis in her vagina after he bathed her.  The abuse continued when they moved to Massachusetts in 2017 and lasted for about six years. A.S. did not know that Tala recorded her and did not want to see the video.[1]

After the Government rested, Tala moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a).[2]  Tala argued that the case hinged on whether the sexually explicit conduct was lascivious.  Ultimately, Tala's attorney argued that the material shown in the video was not sexual in nature—it is a video of an individual giving a young lady a bath.  He argued that the video was not a specific depiction of the pubic area or genitals, but instead was a visual depiction of the entire body.

---

[1] The Government also presented testimony from: Kim Peterson, a guidance counselor at A.S.'s school in Massachusetts; Lieutenant Denise Doherty, an investigator with the Special Victim's Unit of the Norfolk District Attorney's Office; B.S.; and Special Agent Tyler Dervish of the FBI.  Because the facts of this case are graphic, we have chosen to limit the details of the evidence presented to Onuegba and A.S's testimony and the contents of the video.

[2] Federal Rule of Criminal Procedure 29(a) provides, in pertinent part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

The Government objected, arguing that the evidence was more than sufficient to support a conviction. According to the Government, "the best evidence and [most] objective evidence is the video itself." The video shows Tala starting the video and then raising and adjusting the camera to be focused on the shower. Tala then proceeds to "not just lasciviously display [A.S.'s] genitals in the video, but to masturbate her. You see very clearly in the video that he rubs her vagina multiple times. He inserts his fingers into her labia multiple times." Trial Tr., Doc. 95, at 18–19. The Government's bottom line was that "the video is very clear that this was sexually explicit conduct. It was sexual abuse."

The District Court denied Tala's motion and the defense rested. The jury found Tala guilty the same day. At sentencing, there were no objections to the presentence investigation report (the "PSR"), but Tala did submit a sentencing memorandum that argued that his federal sentence should run at least partially concurrently with any sentence imposed by the state of Massachusetts, where related charges were pending against him. The District Court sentenced Tala to 300 months' imprisonment and five years' supervised release.

Tala's attorney asked the Court to determine whether Tala's sentence should be concurrent or consecutive with any sentence in Massachusetts. The Government interjected that it did not believe the Court could affect that. Since the District Court was imposing its sentence first, according to the Government, "it will be up to the State of Massachusetts, when they impose sentence, about what

they would want to do, knowing what it is that you have done down here." Sent'g Hr'g Tr., Doc. 108, at 33. The District Court decided to leave Tala's sentence "as it is."

Tala timely appealed. On appeal, he argues (1) that the evidence against him was insufficient to support his conviction for sexual exploitation of children, (2) that the District Court erred when it did not recognize that it had the discretion to impose a concurrent sentence to related pending state charges, and (3) that the District Court plainly erred in not calculating the guidelines sentence to run concurrently with at least some of the pending Massachusetts charges.

Since Tala filed his appeal, the Massachusetts courts have resolved his case, and the charges are no longer pending. Tala pleaded guilty to some of the Massachusetts charges, and the rest were dismissed. He was sentenced to several concurrent sentences, which were imposed to run concurrently with his federal sentence. The Government moved to dismiss Tala's appeal as to his second and third arguments because they became moot when the Massachusetts court imposed concurrent sentences. That motion was carried with the case.

## II.

We review the sufficiency of the evidence to support a conviction *de novo*, view all the evidence in the light most favorable to the government, and draw all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Grzybowicz*, 747 F.3d 1296, 1304 (11th Cir. 2014). We will not overturn a jury's

verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* (quoting *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013)). We must sustain a verdict where "there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quoting *United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005)).

Section 2251(a) provides a penalty of 15 to 30 years' imprisonment for

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce

18 U.S.C. § 2251(a); *see also id.* § 2251(e) (mandating a statutory term of imprisonment of 15 to 30 years for a violation of § 2251(a)). Sexually explicit conduct includes the "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A)(v). We have previously defined a "'lascivious exhibition' as one that potentially 'excit[es] sexual desires' or is 'salacious.'" *Grzybowicz*, 747 F.3d at 1305-06 (alteration in original) (quoting *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285, 128 S. Ct. 1830 (2008)).

In *Grzybowicz*, we found four photographs to be "blatantly lascivious" where a small child's vagina was the focal point of the

photographs, and, in two of the photographs, the defendant digitally penetrated her. *Id.* at 1306. "[W]hat constitutes a forbidden lascivious exhibition 'is not concrete,' and for this reason[, we have stated,] it is necessary to determine the potentially lascivious nature 'with respect to the actual depictions themselves.'" *United States v. Holmes*, 814 F.3d 1246, 1251 (11th Cir. 2016) (quoting *Williams*, 444 F.3d at 1299). We have recognized the importance of factors such as the "placement of the cameras in the bathroom where [the child] was most likely to be videoed while nude" and the "focus on videoing and capturing images of her pubic area." *Id.* at 1252. Accordingly, "[i]n considering whether an image constitutes a lascivious exhibition, [the] court[] look[s] to the intent of the producer or editor of an image." *Id.* Depictions of "otherwise innocent conduct may in fact constitute a 'lascivious exhibition[,] . . .' based on the actions of the individual creating the depiction." *Id.* at 1251–52. We have noted that photographs of the victim being "found with other sexually explicit photographs could make it more likely that their purpose was to elicit a sexual response." *United States v. Smith*, 459 F.3d 1276, 1296 n.17 (11th Cir. 2006).

Many circuits have used the six factors developed by a district court in California in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), that are relevant to the determination of whether an image constitutes the "lascivious exhibition" of genitals. *Williams*, 444 F.3d at 1299 n.62. The factors are: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually

suggestive, i.e. in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. *Dost*, 636 F. Supp. at 832. The *Dost* factors are incorporated into this Circuit's pattern jury instructions under O83.4A's pattern instructions to help decide whether a visual depiction is a lascivious exhibition, and the instruction concludes: "A visual depiction need not have all these factors to be a lascivious exhibition." *See* 11th Cir. Crim. Pattern Jury Instructions O83.4A (Mar. 2022).

Here, there was sufficient evidence to support a conviction for sexual exploitation of a minor to produce child pornography. Based on testimony from the victim, A.S., about the sexual conduct she suffered at Tala's hands, testimony from Tala's ex-girlfriend about Tala's past sexual behavior, other descriptions of the contents of the video, and the video itself, a reasonable jury could have found that Tala engaged in the lascivious exhibition of the minor victim's genitals that constituted sexually explicit conduct. His conviction is therefore affirmed.

### III.

We review *de novo* whether a case is moot. *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1282 (11th Cir. 2004). "Article III of the Constitution limits the jurisdiction of the federal courts to the

consideration of 'Cases' and 'Controversies.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (per curiam). "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* at 1336 (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept' of Health and Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000)). In considering whether a case is moot, we "look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued." *Dow Jones & Co., Inc. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar*, 273 F.3d at 1335. "Indeed, dismissal is required because mootness is jurisdictional." *Id.*

We grant the government's motion to dismiss the second issue on appeal as moot because the state court in Massachusetts provided the relief that Tala now seeks on appeal—that court ordered his state sentence arising out of similar conduct to run concurrently with his federal sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**